**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| NEW CONCEPT ENERGY, INC. | |
| Plaintiff, | No. 18-Civ. 8896-VSB |
| v. | (ECF) |
| GUY GENTILE and MINTBROKER INTERNATIONAL, LTD. | |
| Defendants. | |
| Related to: | |
| AVALON HOLDINGS CORP., | |
| Plaintiff, | No.  18-Civ-7291-VSB |
| v. | |
| GUY GENTILE and MINTBROKER INTERNATIONAL, LTD. | |
| Defendants. | |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT MOTION TO DISMISS**
**UNDER FED. R. CIV. P. 12(b)(3) AND IN THE ALTERNATIVE TO TRANSFER**
**UNDER 28 U.S.C. §1406 AND IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**
**UNDER FED. R. CIV. P. 12(b)(6)**

FORD O'BRIEN LLP

Adam C. Ford
Robert S. Landy
575 Fifth Avenue
17th Floor
New York, New York 10017
aford@fordobrien.com
rlandy@fordobrien.com
(212) 858-0040
*Attorneys for Defendants*

December 27, 2018

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES.................................................................................................. iii

PRELIMINARY STATEMENT ........................................................................................... 1

STATEMENT OF FACTS.................................................................................................... 5

ARGUMENT......................................................................................................................... 8

    I.    PURSUANT TO 28 U.S.C. § 1391, THE DISTRICT OF PUERTO RICO AND THE NORTHERN DISTRICT OF TEXAS ARE THE ONLY POSSIBLE VENUES FOR THE NEW CONCEPT ENERGY ACTION .................................................................................. 9

        A.    Venue in the New Concept Energy Action would have been Appropriate in the District of Puerto Rico Under 28 U.S.C. §§ 1391(b)(1) and (c)(3)................................. 10

        B.    Venue in the New Concept Energy Action is Not Proper in New York ................. 11

        C.    For the Same Reasons, Pursuant to 28 U.S.C. § 1391, the District of Puerto Rico and the District of Ohio are the Only Possible Venues for the New Avalon Holdings Action. ....................................................................................................................... 11

        D.    In the Alternative to Dismissal Under FED. R. CIV. P. 12(b)(3), the Court May Transfer These Actions to Puerto Rico Under 28 U.S.C. §1406 as Venue is Proper there for Both. ............................................................................................................. 12

    II.    THE FACTS OF THESE CASES FALL FAR BEYOND SECTION 16(B)'S STATUTORY INTENT AND IMPOSITION OF LIABILITY HERE IS PRECLUDED AND WOULD BE UNJUST AND SERVE NO LEGITMATE PURPOSE ...................... 12

CONCLUSION .................................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

<u>**Cases**</u>

*Basile v. Walt Disney Co.,*
  717 F. Supp. 2d. 381 (S.D.N.Y. 2010) ................................................................. 8

*Can't Live Without It, LLC v. CSS, Inc.,*
  18 CV4789 (DLC), 2018 WL 4265906, at *2 (S.D.N.Y. Sept. 6, 2018)........................... 12

*Cartier v. Micha, Inc.,*
  No. 06 Civ. 4699, 2007 WL 1187188, at *2 (S.D.N.Y. Apr. 20, 2007) ............................. 8

*Chechele v. Sperling,*
  Fed. Sec. L. Rep. P. 96786 (S.D.N.Y. Mar. 29, 2012) ........................................ 13

*Donoghue v. Centillium Commc'ns Inc.,*
  No. 05 Civ. 4082 (WHP), 2006 WL 775122, at *5 (S.D.N.Y. Mar. 28, 2006) ...... 3 FN. 2, 13

*Gulf Ins. Co. v. Glasbrenner,*
  417 F.3d 353 (2d Cir. 2005)................................................................................ 11

*Minnette v. Time Warner,*
  997 F.2d 1023 (2d Cir. 1993)............................................................................... 12

*Rothstein v. Carriere,*
  41 F. Supp. 2d. 381 (E.D.N.Y. 1999) ................................................................... 8

*Rubenstein v. Live Nation Entertainment,*
  Fed. Sec. L. Rep. P. 99744 (S.D.N.Y. June 20, 2017)........................................ 3 FN. 2, 13

*Spar, Inc. v. Info. Res., Inc.,*
  956 F.2d 392 (2d Cir. 1992)................................................................................. 12

<u>**Statutes and Rules**</u>

15 U.S.C. § 78p(b)...................................................................................... 2, 3

28 U.S.C. §1391 ..................................................................................... *passim*

28 U.S.C. §1406 ........................................................................................ 2, 12

Fed R. Civ. P. 12......................................................................................... *passim*

Pursuant to Fed R. Civ. P. 12(b)(3) and 28 U.S.C. §1406, by their undersigned attorneys, Defendants MintBroker International, Ltd. (Bahamas) ("MBI") and Guy Gentile ("Gentile") respectfully move for an Order dismissing theses related actions for improper venue, or in the alternative transferring this action to the United States District Court for the District of Puerto Rico pursuant to 28 U.S.C. §1406. In addition, pursuant to Fed. R. Civ. P. 12(b)(6), Defendants respectfully move for an Order dismissing theses related actions on the merits (understanding that no decision on such portion of this motion can be rendered until venue is established).

## PRELIMINARY STATEMENT

The related actions at issue in this motion are novel, although they are brought by counsel who are no strangers to novel theories of liability under 15 U.S.C. § 78p(b) ("Section 16(b)"). Indeed, Plaintiffs' counsel have filed dozens of cases alleging a short swing profit violation, often using the same two individuals as their shareholder plaintiff.[1]  But the questionable conduct of Plaintiffs' lawyers is not the focus of these motions.  Nor are the impertinent and scurrilous claims they make about Gentile, though the impropriety of such recklessly made defamatory allegations will be addressed in due course.  Rather, this memorandum addresses the simple fact that the complaints in both actions suffer the same threshold procedural defect: there is no basis to place venue in New York whatsoever. As such, both complaints must be dismissed for improper venue.  While it is a decision for the properly venued court, it is clear that both matters should also be dismissed on the substance as well, as the novel theory of liability alleged in the complaints fall far outside the conduct regulated by Section 16(b).

Both cases relate to the alleged short-swing profit obtained by an alleged insider (MBI) and by implication its owner (Gentile).  But unlike the many cases this District has considered

---

[1] Deborah Donahue and Aaron Rubenstien have conspired with Plaintiffs' counsel to bring dozens of Section 16(b) actions in this Court on a "derivative" basis and have purchased securities in collusion with Plaintiffs' counsel for the obvious purpose of initiating a litigation and to assist counsel represent the issuer on a contingent basis.

under 15 U.S.C. § 78p(b) ("Section 16(b)") regarding insiders and statutory insiders, these two related actions here involve the intersection of a new trading market, dominated by high-frequency trading, and Section 16(b) which was intended to deal with the problem of the misuse or potential misuse of inside information, by *insiders* who could potentially have access to inside information. Congress obviously *did not* intend Section 16(b) to regulate trades by rapid-trade arbitrageurs unknowingly trading with algorithm-driven trading programs that do not have possession of the necessary shares.  Indeed, high-frequency trading did not even exist when Congress drafted Section 16(b).

In making its allegations on a set of facts that plainly falls outside the framework of Section 16(b), Plaintiffs allege that MBI exceeded the statutory 10% threshold for ownership of a class of stock for period so short that the complaints measure it in "*hours*" (although even those allegations are false as a factual matter because most of the trade orders failed to settle so MBI was never a "statutory insider").  The idea that MBI enjoyed any informational benefits of being an insider for the "hours" it allegedly held 10% in the plaintiffs' stock is refuted by not just logic, but Plaintiff itself, which immediately following some of the trades asserted in an SEC filing – truthfully – that it had no idea who Defendants were, that they were not insiders, and they certainly had no relationship, connection, or inside information about the company – nor could they have. Moreover, there was no inside information that could have been misused, as the CEO went on to assert in public statements that the company "is unaware of any [inside] information or events that would warrant" the recent stock activity.

Indeed, regarding the Avalon action, after MBI entered into certain contracts to purchase shares in Avalon Holding Corp., Avalon issued an SEC Form 8K and an attached press release explicitly stating that MBI "is not affiliated with the Company and Avalon has no information about [MBI]'s intentions regarding its holdings."  In the same release, Avalon stated that the "Chairman and Chief Executive Officer of the Company, holds approximately 67% of the voting

power in Avalon, and has advised the Company that he has no present plans to divest any of his holdings." After the Avalon 8K, MBI sold its holdings as it became clear at that point that the shares it intended to purchase could not settle because the sellers did not actually own the shares they sold. Then, just two weeks after publicly disavowing any affiliation with MBI (because MBI was merely a company that had placed trades in its stock on the open market and sold those shares within "hours"), Avalon brought its action seeking disgorgement of profits from MBI as prohibited "insider" transactions, and improperly tacked on Gentile for the apparent purpose of adding extra color to the Complaint and Amended Complaint by making a serious of false and defamatory assertions involving an old, entirely-dismissed criminal action against him.

While some cases analyzing 15 U.S.C. § 78p(b) have found it to not require a showing that the insider possessed or acted on knowledge for liability to attach, those cases have dealt with actual insiders and the actual potential for misuse of inside information. The more recent cases have reasoned that when circumstances do not fit the pattern of a Section 16(b) case as Congress intended, courts must consider whether the application of liability would serve the Section's statutory purpose of preventing insiders from reaping the benefits of their potential access to information. Applying it here would not, because: (1) MBI had no potential to obtain inside information and its status as an alleged "insider" lasted only "hours," (2) one of the two plaintiffs publicly disclaimed any knowledge or affiliation with MBI before bringing its suit (against MBI as an "insider"); and (3) with respect to Gentile, there is no allegation that he ever obtained any profit that could be disgorged (because he did not) or that MBI would not be able to satisfy a judgment.[2]

---

[2] It is noteworthy that these recent cases include decisions in this Circuit against Plaintiffs' counsel here who have been strongly criticized for their unethical solicitation of clients. See e.g., *Rubenstein v. Live Nation Entertainment*, Fed. Sec. L. Rep. P. 99744 (S.D.N.Y. June 20, 2017) (addressing question of whether Plaintiffs' counsel here should be punished with sanctions); *see also Donoghue v. Centillium Commc'ns Inc.*, No. 05 Civ. 4082(WHP), 2006 WL 775122, at *5 (S.D.N.Y. Mar. 28, 2006) (court dismissing another case brought by Plaintiff's counsel improperly seeking to expand Section 16(b) liability).

However, as a threshold issue for this Court, the Southern District of New York is clearly an improper venue for these now-related actions. These actions involve: (1) a claim made by lawyers for an Ohio-based company against a resident of Puerto Rico and a Bahamas-based company that he owns; and (2) a claim made by lawyers for a Texas-based company against the same resident of Puerto Rico and the same Bahamas-based company that he owns. There are no allegations that the Puerto Rico resident (defendant Gentile) ever stepped foot in New York (except in a strike-worthy immaterial reference to Gentile's arrest in New York in 2012, in an unrelated matter). There are no allegations that the Bahamas-based company conducted any business in this district (or anywhere in the United States), nor could such allegations be made. While the assertion of a claim under the United States securities laws may subject a defendant to personal jurisdiction in any Federal Court, the venue provisions of Title 28 limit the districts where that defendant may be forced to litigate.

But both plaintiffs here allege venue is proper in this District by virtue of a single fact: that plaintiffs are public companies with stock trading on an exchange (the NYSE) which is headquartered in this District. Nothing more. By extrapolation, plaintiffs thus allege that this Court is a proper venue for *any* case involving trading in *any* company with shares listed on the New York Stock Exchange, NASDAQ, or the American Stock Exchange. The Second Circuit has obviously, and clearly, rejected this idea. Even if it didn't, plaintiffs conveniently ignore the well-known fact that only a small fraction of trading in exchange-listed-company stock occurs on the floor of these exchanges anymore. While the location of the servers on which trades are executed, alone, cannot possible serve as a basis for venue for any case, as a factual matter those servers are in New Jersey, not in New York.

Because defendant MBI is a Bahamian entity based in the Bahamas, it is disregarded for venue purposes under 28 U.S.C. §1391(c)(3). Only the domicile of defendant Guy Gentile is relevant. Because he is a Puerto Rico domiciliary, which the complaints in the related actions

both concede, venue would be proper in the District of Puerto Rico under 28 U.S.C. §1391(b)(1) (and as such, the catch-all provision – §1391(b)(3) – which allows venue to be placed in any district that has personal jurisdiction, is not applicable).

Venue also cannot be proper in this District under 28 U.S.C. §1391(b)(2), which requires a substantial portion of the events or omissions to have taken place here.  They did not. Nothing occurred in this district, nor do any of the parties have any contacts here.

In these actions, the plaintiffs allege that a Bahamas company became an insider of a Texas-based company and then an Ohio-based company, and then sold its shares too soon, causing statutorily-presumed damages to the Texas-based company and then the Ohio-based company respectively.  These substantive allegations will be proven false, but before then this case must be moved to the proper venue. While 28 U.S.C. §1391(b)(2) might have allowed the New Concept Energy Action to be venued in Texas (as well as Puerto Rico), and it might have allowed the Avalon Holding Action to be venued in Ohio (as well as Puerto Rico), the provision does not permit these actions to proceed in New York. As such, these matters should both be dismissed, first for improper venue, and also for failure to state a claim.

## STATEMENT OF FACTS

These actions, if brought in a properly-venued district pursuant to 28 U.S.C. §1391, will address several novel issues of law and disputed issues of fact.  Unfortunately, many of the facts alleged in the amended complaint in the Avalon Action and in the complaint in the New Concept Action omit the relevant facts, which are discussed briefly below.

### *In August 2016, Gentile Moved from Miami, Florida his prior domicile, to San Juan, Puerto Rico, where he is domiciled and a permanent resident.*

The Amended Complaint in the Avalon Action ("Av. Am. Comp.") and the Complaint in the New Concept Action ("NCE Comp.") both allege, under the heading "Jurisdiction," that Gentile is a "domicilar[y] of Puerto Rico and/or Florida." (Av. Am. Comp. ¶ 11; N.C.E. Comp. ¶ 2); (Ford Declaration. ¶ Ex. D & E).  Of course, one can only have one domicile at a time and

Plaintiffs are correct to allege he is a domicile of Puerto Rico.  He is clearly not a domicile of Florida, as Plaintiffs concede. In fact, Gentile is a domicile and permanent resident of Puerto Rico, where he moved permanently in 2016. (December 20, 2018 Affidavit of Guy Gentile ("Gentile Aff.") ¶ 1.) While Gentile also maintains a residence in the Bahamas, he no longer maintains one in Florida or any other U.S. State or Territory.  (Gentile Aff. ¶ 2.)  Gentile shipped his car from Florida to Puerto Rico in 2016, pays taxes in Puerto Rico, and is committed to a resident of Puerto Rico with whom he lives, has had a child with, is raising that child there. (Gentile Aff. ¶ 3.)  He moved to Puerto Rico with the intention to remain there and currently intends to remain there with his child and all of his personal belongings. (Gentile Aff. ¶ 4.)

> ***On June 29, 2018, MintBroker Placed Orders for Shares in the Texas-Based New Concept Energy Inc. Stock Many of Which Never Settle and MBI Never Took nor Could Have Taken Possession of Because the Sellers Did Not Actually Own the Shares.***

In or about June 29, 2018, MBI (a Bahamas-based company (NCE Comp. ¶¶ 2, 8; MBI Aff. ¶ 1)) placed several orders for shares in New Concept Energy Inc. a Dallas-Texas-based energy company.  (MBI Aff. ¶ 1; NCE Comp. ¶3, Ex. A).  On Friday, June 29, 2018, MBI timely reported its intended purchases by filing an SEC Form 3.  (NCE Comp. Ex. A). The following Monday, before some or all of the trades settled, the price of New Concept Stock began to rise. (NCE Comp. ¶ 21; MBI Aff. ¶ 3).  While unknown at the time, most of the shares MBI had entered into contracts to purchase were sold by individuals who did not actually have possession of the shares, i.e., a "naked short sales" and realizing that the trades it attempted to enter into the previous week would likely fail to settle because the sellers did not have the shares to deliver, MBI exited the position prior to taking ownership of most if not all of the shares. (MBI Aff. ¶ 3).[3] MBI properly filed its Form 13D disclosing that it did not own more than 5% of NCE shares. (MBI Aff. ¶ 4).

---

[3] Under the general T+2 rule, any purchases made on June 28 or 29, would not be required to settle until July 2 or 3, assuming that short sellers were able to cover.

***On or About July 27, 2018, MBI Place Orders for Shares in the Ohio-Based Avalon
Holdings Corp. Stock Many of Which Never Settle and MBI Never Took nor Could Have
Taken Possession of Because the Sellers Did Not Actually Own the Shares.***

In or about July 27, 2018, MBI placed several orders for shares in Avalon Holding Corp.
an Ohio-based waste management company.  (MBI Aff. ¶ 5; Av. Am. Comp. ¶¶12, 23, Ex. A).
On Friday, July 27, 2018, MBI timely reported its purchases by filing an SEC Form 3.  (Av. Am.
Comp. Ex. A). However, by the afternoon on July 27, the price of Avalon Class A shares was
rising and MBI became concerned that is had placed orders that had been filled electronically by
market makers selling naked short, raising the possibility of failed trades.  [MBI Aff. ¶ 6].  MBI
began to sell its position that day. (Av. Am. Comp. Ex. C).  On Monday, July 30, 2018, Avalon
issued an 8K and press release indicating that it had no affiliation with MBI and no knowledge of
why MBI had amassed a position in Avalon Class A stock.  (Ford Declaration. ¶, Ex. A).  The
press release referred to its most recent proxy statement, which in turn showed that noting that
Avalon's CEO (by virtue of his 99.8% ownership of the company's Class B shares), maintained
more than 67% of the voting rights in the company and had a right to appoint a majority of the
board.[4] (*Id*.).  The press release further asserted that there was no information about the
company's performance or plans that could have reasonably been related to any change in stock
price during this time.  (*Id*.)

That day, the price of the stock continued to rise.  It became apparent that the market
makers had entered into contracts to sell shares did not actually own any shares, and had no
ability to purchase since Avalon's CEO had now publicly stated that he and other insiders had at
least 48% of shares in the company and was refusing to sell any of his shares.  Under the

---

[4] As such, even though the Av. Am. Comp. alleges that MBI amassed approximately 60% of
Avalon's Class A shares Avalon must know this is false since its own company SEC filings
assert that insiders own more than 48% of all such shares and did not sell during this time period.
If both of Plaintiffs allegations are true, this would result in their being more than 100% of shares
outstanding, a logical impossibility.

circumstances, as with New Concept Energy, MintBroker exited the position. Notably, in a March 16, 2018 proxy statement, Avalon reported that insiders held 48% of the company's Class A shares, and none filed Form 4's indicating sales to MBI.  (Ford Declaration. ¶ Ex. B). As such, in retrospect, it is clear that a large portion of the shares MBI "purchased" were from short-selling market makers (or pessimistic investors) that did not own any stock, had no ability to cover, and that a portion of the trades complained of in the Avalon Action never settled.  As noted above, this is not an ordinary Rule 16(b) case.

## ARGUMENT

"It is hornbook law that venue and personal jurisdiction are threshold procedural issues to be decided before the substantive grounds in a motion to dismiss." *Basile v. Walt Disney Co*., 717 F. Supp. 2d. 381, 385 (S.D.N.Y. 2010).  "Where venue is challenged, it is plaintiff's burden to show that it is proper in the forum district. *Rothstein v. Carriere*, 41 F. Supp. 2d. 381, 386 (E.D.N.Y. 1999).  "The Court, then, must address whether plaintiff has demonstrated proper venue with respect to each count in the Complaint. In making that determination, 'the Court may consider documents outside of the complaint.' *Basile,* 717 F. Supp. 2d. at 385 quoting *Cartier v. Micha, Inc*., No. 06 Civ. 4699, 2007 WL 1187188, at *2 (S.D.N.Y. Apr. 20, 2007).

As such, defendants' arguments regarding the only proper venue for these actions – the Untied States District Court for the District of Puerto Rico – are addressed first below.  While there were two potentially proper venues for each of the related actions before they were related, only Puerto Rico is appropriate for both, and New York is improper for either.  In case this Court should decide not to dismiss, or in the interests of justice, transfer these actions to the District of Puerto Rico, Defendants substantive arguments for dismissal are discussed second, though it is the transferee court that is best suited to rule on them, and Defendants would request the opportunity to more fully brief the argument in front of the proper court.

I.    **PURSUANT TO 28 U.S.C. § 1391, THE DISTRICT OF PUERTO RICO AND THE NORTHERN DISTRICT OF TEXAS ARE THE ONLY POSSIBLE VENUES FOR THE NEW CONCEPT ENERGY ACTION**

The New Concept Energy Action is a case brought by New-York-based counsel on behalf of a Nevada Corporation with a principal place of business location in Dallas, Texas. (NCE Comp. ¶ 3).   In its complaint, New Concept alleges without evidence that MBI, a Bahamas-based company, engaged and a "pump-and-dump scheme" with New Concept securities (NCE Comp. ¶ 0)[5].  Despite – or rather as proof of – these recklessly false allegations, the Plaintiffs makes no claim based on fraud. New Concept alleges that MBI is defendant "Gentile's creature" (NCE Comp. ¶ 24) and seeks to hold Gentile, a domiciliary of Puerto Rico (NCE Comp. ¶ 2; Gentile Dec. ¶ 1) "jointly and severally" liable for any profits earned by the Bahamas-based MBI (NCE Comp. ¶ (b) (in the claim for relief)).

Putting aside Plaintiff's colorful, impertinent pleading that elevates salacious allegations over any actual provable allegation, the New Concept matter relates to the actions of a company in the Bahamas, which is owned and allegedly controlled by an individual in Puerto Rico, that allegedly caused damages to a plaintiff incorporated in Nevada and based in Texas.

The only connection to the Southern District of New York in either case: New Concept and Avalon are listed on the New York Stock Exchange.  (NCE Comp. ¶ 4; Av. Am. Comp. ¶ 13).  However, though New Concept and Avalon both allege that "most of the purchases and sales took place upon" the New York Stock Exchange (*Id.*), it does not and cannot alleged that the trades themselves occurred in this district.  It is common knowledge that the vast majority of trading no longer takes place on the floor of the exchange on the corner of Broad St. and Wall St., but rather in data centers located in northern New Jersey.  (*See, e.g.*, Exhibit C to Ford Declaration).

---

[5] The first substantive allegations of the NCE Comp. are contained in an unnumbered paragraph referred to herein as "¶ 0".

To recap:  The New Concept case is brought by a Texas company regarding trades made by a Bahamas company owned by a Puerto Rico domiciliary, in securities that are listed on an exchange that runs the vast majority of its trading operations in New Jersey.  The Avalon case is brought by an Ohio company regarding trades made by a Bahamas company owned by a Puerto Rico domiciliary, in securities that are listed on an exchange that runs the vast majority of its trading operations in New Jersey. More devastating to the Plaintiffs' allegations here is their failure to allege that the trades were even placed with the NYSE and in fact the majority of trades were not even placed with that entity in New Jersey, but through other trading platforms also outside New York.

**A.     Venue in the New Concept Energy Action would have been Appropriate in the District of Puerto Rico Under 28 U.S.C. §§ 1391(b)(1) and (c)(3)**

Pursuant to 28 U.S.C. §1391(b):

A civil action may be brought in—

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
>
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action

Under to 28 U.S.C. §1391(c)(3) "a defendant not resident in the United States may be sued in any judicial district, and the joinder of such a defendant shall be disregarded in determining where the action may be brought with respect to other defendants."

Therefore, had this action been bought in the United Stated District Court for the District of Puerto Rico, venue would have been proper because Gentile resides there and MBI's non-US residency is disregarded.

Because venue in Puerto Rico would be proper, it may not be placed in this district under 28 U.S.C. §1391(b)(3).

**B.      Venue in the New Concept Energy Action is Not Proper in New York**

In opposition, New Concept might argue that the fact that its shares are listed on the New York Stock Exchange makes venue appropriate in this District under 28 U.S.C. §1391(b)(2). The argument fails.  As an initial matter, as noted above, New Concept is careful not to allege that the shares at issue were traded in New York, because it (or its counsel) knows that all trading activity are carried out in data centers outside of the District.

Moreover, the New Concept case is about whether actions taken in the Bahamas violated Section 16(b) and thus caused damages in Texas.  But these allegations preclude any lawsuit in this district. "The Second Circuit has cautioned district courts 'to take seriously the adjective 'substantial'' in Section 1391, and has stated that 'for venue to be proper, significant events or omissions material to the plaintiff's claim must have occurred in the district in question, even if other material events occurred elsewhere.' Can't Live Without It, LLC, 2018 WL 4265906, at *1 quoting *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 357 (2d Cir. 2005). The location of the servers on which the trades at issue happened to be processed is incidental at most.  Even if those computers sat in a room at 11 Broad Street in Manhattan, it would not create venue in this district.  As such, venue in the New Concept action is improper in New York.

**C.      For the Same Reasons, Pursuant to 28 U.S.C. § 1391, the District of Puerto Rico and the District of Ohio are the Only Possible Venues for the New Avalon Holdings Action.**

The venue analysis for the Avalon matter is the same as the New Concept matter, except that the District of Ohio takes the place of the Northern District of Texas in the analysis.  Venue would be proper in Puerto Rico because Gentile resides there (and MBI's residence outside the U.S. does not count in the analysis).  (Av. Am. Comp. ¶ 11).  Venue is not proper in this District. The allegations in Avalon's Amended Complaint liking the action to this District are identical to those in the New Concept Complaint.  (NCE Comp. ¶ 12-29; Av. Am. Comp. ¶ 22-40).  As such, venue in the Avalon action is improper in New York, but would be proper in the District of

Puerto Rico.

D.     **In the Alternative to Dismissal Under FED. R. CIV. P. 12(b)(3), the Court May Transfer These Actions to Puerto Rico Under 28 U.S.C. §1406 as Venue is Proper there for Both.**

"If venue does not lie where an action was brought, 28 U.S.C. § 1406(a) provides that '[t]he district court ... shall dismiss [the case], or if it be in the interest of justice, transfer such case to any division or district in which it could have been brought.' If allowing a transfer would reward a plaintiff for its lack of diligence in choosing a proper forum, transfer is not in the interest of justice. Whether dismissal or transfer is appropriate lies within the sound discretion of the district court." *Can't Live Without It, LLC v. CSS, Inc*., 18CV4789 (DLC), 2018 WL 4265906, at \*2 (S.D.N.Y. Sept. 6, 2018) (internal quotations omitted) *citing Spar, Inc. v. Info. Res., Inc.*, 956 F.2d 392, 391 (2d Cir. 1992) and *Minnette v. Time Warner*, 997 F.2d 1023, 1026 (2d Cir. 1993); 28 U.S.C. §1406(a).

Here, defendants submit this case to the Court to exercise its discretion and to select the best outcome, which Defendants respectfully submit is to dismiss both related actions with permission for the Plaintiffs to refile the related actions in Puerto Rico.  Critically, while it is clear that plaintiffs' counsel brought the cases in this District without any consideration of the proper venue and with only the convenience of their counsel in mind, defendants would be prejudiced if the Court were to dismiss the action, and the plaintiffs then refiled in Texas *and* Ohio, subjecting defendants to duplicative litigation and the possibility of divergent outcomes. Now that the parties have agreed by executed stipulation that the matters are related, they should stay related in any subsequent proceeding.

II.     **THE FACTS OF THESE CASES FALL FAR BEYOND SECTION 16(B)'S STATUTORY INTENT AND IMPOSITION OF LIABILITY HERE IS PRECLUDED AND WOULD BE UNJUST AND SERVE NO LEGITIMATE PURPOSE**

"When a transaction does not fall within the literal terms of Section 16(b), the statute must be interpreted in a way that is consistent with its legislative purpose." *Chechele v.*

12

*Sperling*, Fed. Sec. L. Rep. P. 96786 (S.D.N.Y. Mar. 29, 2012], affd, 758 F3d 463 (2d. Cir.

2014).   As such, "Section 16(b) liability depend[s] on 'whether the transaction may serve as a

vehicle for the evil which Congress sought to prevent—the realization of short-swing profits

based upon access to inside information.'" *Id.* quoting *Donoghue v. Centillium Commc'ns Inc.,*

No. 05 Civ. 4082(WHP), 2006 WL 775122, at *5 (S.D.N.Y. Mar. 28, 2006).   In special

situations, "where an insider has had no opportunity to speculate on the basis of [] inside

information, Section 16(b) has not been violated."   *Rubenstein v. Live Nation Entertainment*,

Fed. Sec. L. Rep. P. 99744 (S.D.N.Y. June 20, 2017).

     Section 16(b) was clearly not designed to recover profits made from high-frequency

trading positions by briefly-tenured shareholders with no connection to an issuer and no

conceivable opportunity to obtain inside information, and where the company itself has asserted

there was no relevant information in existence.   Rather, it was designed to prevent speculation on

the basis of insider information, without requiring a plaintiff to prove the possessing and misuse

of such inside information.

     The cases cited above (both brought by Plaintiffs' counsel) are instructive. In each, the

Court has evaluated the substance of and timing of the transaction alleged and found that they

did not permit the alleged insider to speculate on inside information in a six-month window.

Finding that such speculation was impossible in each case, the courts dismissed the actions

brought by Plaintiffs' counsel there.   This case presents the same situation.

     The question for the Court in this instance is whether, if an investor holds its position as

an alleged "insider" for a period of merely "hours," such that it would be literally impossible for

the investor to have obtained insider information in that time, and Plaintiffs' acknowledge – as is

true – that Defendants in fact possessed no inside information, nor could such an allegation

plausibly be made, does Rule 16(b) apply.  Here, the Avalon plaintiff presses the question even

further, because two weeks before filing its lawsuit, it publicly disclaimed in an SEC filing that it

any knowledge of or connection to MBI and there was no news or information about the company that could have possibly affected its stock price during this time.[6]

Some or all of the trades at issue involved computer-driven short selling and never, in fact, settled (such that MBI never took custody of some or all the shares it bought and therefore never became a statutory insider even assuming Section 16(b) applies to such trading activities). Nor could the trades have ever settled because the sellers were not actually selling any shares in either of these companies, they were simply betting that these companies' stocks would decline and "selling naked short" positions. These transactions are well beyond the reach of Section 16(b), and these complaints do not make out any cognizable violation and as such should be dismissed as a matter of law.

---

[6] Moreover, in a telling slip of the tongue, as part of plaintiffs' counsel tactic of saturating the complaints with scurrilous content, the New Concept Energy complaint describes the rapid transaction as a "pump-and-dump scheme."  (NCE Comp. ¶ 0.)  Of course, any such scheme would lead to a claim by the counterparties to the trades, and not New Concept.

14

**CONCLUSION**

For the foregoing reasons, the Court should dismiss both actions for improper venue and grant Plaintiffs leave to refile these related cases in the only proper venue, Puerto Rico. Or in the alternative dismissed both actions for failure to state a claim as Plaintiff's allegations do not fall within Section 16(b)'s prohibited conduct.

Dated: December 27, 2018

Respectfully submitted,

FORD O'BRIEN LLP

_____
Adam C. Ford
Robert S. Landy
575 Fifth Avenue
17th Floor
New York, NY 10017
(212) 8580-040
aford@fordobrien.com
rlandy@fordobrien.com

*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| NEW CONCEPT ENERGY, INC.<br><br>       Plaintiff,<br><br>       v.<br><br>GUY GENTILE and<br>MINTBROKER INTERNATIONAL, LTD.<br><br>       Defendants. | No. 18-Civ. 8896-VSB |
| Related to: | |
| AVALON HOLDINGS CORP.,<br><br>       Plaintiff,<br><br>       v.<br><br>GUY GENTILE and<br>MINTBROKER INTERNATIONAL, LTD.<br><br>       Defendants. | No.  18-Civ-7291-VSB<br><br>(ECF)<br><br><br>**RULE 7.1 STATEMENT** |

Pursuant to Federal Rule of Civil Procedure 7.1 [formerly Local General Rule 1.9] and to enable District Judges and Magistrate Judges of the Court to evaluate possible disqualification or recusal, the undersigned counsel for MintBroker International Ltd. (Bahamas) (a private non-governmental party) certifies that MintBroker International Ltd. (Bahamas) is a privately-held company with no parent company and no publicly-traded entity owns 10% or more of the company.

Dated: December 27, 2018

_____
Adam C. Ford, Esq.