```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9/24/2019
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
        :
AVALON HOLDINGS CORPORATION,  :
        :
        Plaintiff,  :
        :  18-CV-7291 (VSB)
      - against -  :
        :
GUY GENTILE and MINTBROKER  :
INTERNATIONAL, LTD.,  :
        :
        Defendants.  :
-----------------------------------------------------------:
        :
NEW CONCEPT ENERGY, INC.,  :
        :
        Plaintiff,  :  18-CV-8896 (VSB)
        :
      - against -  :  **OPINION & ORDER**
        :
GUY GENTILE and MINTBROKER  :
INTERNATIONAL, LTD.,  :
        :
        Defendants.  :
        :
------------------------------------------------------------X

Appearances:

David Lopez
Law Office of David Lopez
Southampton, New York

Miriam Deborah Tauber
Miriam Tauber Law
New York, New York
*Counsel for Plaintiffs*

Adam C. Ford
Robert Seabrook Landy
Ford O'Brien LLP
*Counsel for Defendants*

<u>VERNON S. BRODERICK</u>, United States District Judge:

Plaintiffs Avalon Holdings Corporation ("Avalon") and New Concept Energy, Inc. ("New Concept") bring these two related actions against Defendants Guy Gentile ("Gentile") and MintBroker International, Ltd. ("MintBroker"), seeking disgorgement pursuant to Section 16(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78p(b), of the short-swing profits that Defendants—who, at the time of the relevant transactions, owned more than 10% of Plaintiffs' stock—purportedly made by purchasing and then selling shares of Plaintiffs' securities within a period of approximately one week.  Before me is Defendants' motion to dismiss for improper venue pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure, or alternatively, to dismiss for failure to state a claim pursuant to Rule 12(b)(6).  Because I find that venue is proper in this district and Plaintiffs' allegations are sufficient to state a claim, Defendants' motion is DENIED.

## I.     **Background**[1]

### A.    *The Parties*

Plaintiff Avalon is an Ohio corporation with "principal offices located" in Ohio.  (Avalon Compl. ¶ 12.)  Plaintiff New Concept is incorporated under Nevada law, but its principal offices are located in Texas.  (New Concept Compl. ¶ 3.)  Defendant Guy Gentile is a resident of Puerto Rico, who has a "100% pecuniary interest in the proprietary trading activities" of Defendant

---

[1] The following facts are taken from Avalon's Amended Complaint for Recovery of Short-Swing Profits Under 15 U.S.C. 78p(b) ("Avalon Complaint" or "Avalon Compl."), filed September 28, 2018, (Doc. 19), and from New Concept's Complaint to Compel Compliance with the Reporting Requirements of 15 U.S.C. 78p(a) and for Recovery of Short-Swing Profits Under 15 U.S.C. 78p(b) ("New Concept Complaint" or "New Concept Compl."), filed September 28, 2018, (No. 18-cv-8896, ECF No. 1).  The Avalon Complaint and the New Concept Complaint are collectively referred to as "Complaints" in this Opinion & Order.  Unless otherwise noted, all references in this Opinion & Order to document numbers correspond with the electronic docket numbers in the first-filed Avalon action.  My reference to the factual allegations in Plaintiffs' Complaints should not be construed as a finding as to their veracity, and I make no such findings.

MintBroker, which is based in the Bahamas.[2]  (Avalon Compl. ¶¶ 14–15, 17.)

### B. *Avalon Action*

Avalon's Class A Common Stock is publicly held and is traded on the New York Stock Exchange ("NYSE").  (Avalon Compl. ¶ 1.)  As of July 27, 2018, there were 3,191,100 outstanding shares of Avalon Class A Common Stock.  (*Id.* ¶¶ 24–25.)

On July 24, 2018, at approximately 2:38 p.m., Defendants purchased 6,200 shares of Avalon's Class A Common Stock; in combination with Defendants' previously acquired shares, this purchase increased Defendants' total holdings of Avalon Class A Common Stock to more than 10% of all outstanding shares.  (*Id.* ¶ 6.)[3]  During the time period following that July 24 purchase, and ending at approximately 11:45 a.m. on July 31, 2018 (referred to herein as the "Avalon short-swing trading period"), Defendants engaged in 2,331 purchase and sale transactions in Avalon Class A Common Stock, involving approximately 4,700,000 shares.  (*Id.* ¶¶ 6–9.)  Specifically, Defendants purchased approximately 2,325,244 shares of Avalon Class A Common Stock and sold approximately 2,351,858 shares.  (*Id.* ¶¶ 37–38.)  Because the price of Avalon Class A Common Stock increased dramatically during the Avalon short-swing trading period (from a price of $2.20 per share on July 23, 2018 to a peak of $36.00 per share on July 30, 2018), Defendants derived over $7,000,000 in profits from these transactions.  (*Id.* ¶¶ 31, 39.)

On July 31, 2018, at approximately 11:45 a.m., Defendants sold 5,000 shares of Avalon Class A

---

[2] Plaintiffs allege that Gentile may reside in either Puerto Rico, London, the Bahamas, or Florida.  (*See* Avalon Compl. ¶ 14; New Concept Compl. ¶ 5.)  However, for purposes of the instant motion, Plaintiffs "accept that Guy Gentile is a domiciliary of Puerto Rico."  (Pls.' Opp'n 4.)  ("Pls.' Opp'n" refers to Plaintiffs' Brief in Opposition to: Defendants' Motion to Dismiss Under F.R.C.P. 12(b)(3), and in the Alternative, to Transfer Under 28 U.S.C. § 1406; and Defendants' Motion to Dismiss Under F.R.C.P. 12(b)(6), filed January 29, 2019.  (Doc. 32.).)

[3] Avalon gathered this trading data from the schedule of trades included in Defendants' Schedule 13D, (*see* Avalon Compl. ¶ 30), which beneficial owners of more than 5% of a class of a company's stock must file with the United States Securities and Exchange Commission ("SEC"), *see Vladimir v. Bioenvision, Inc.*, 606 F. Supp. 2d 473, 491 (S.D.N.Y. 2009).

Common Stock, thereby reducing their ownership to less than 10% of all outstanding shares. (*Id.* ¶ 7.)

### C. *New Concept Action*

New Concept's Common Stock is publicly held and traded on the NYSE. (New Concept Compl. ¶ 4.) As of June 29, 2018, there were 2,131,935 outstanding shares of New Concept Common Stock. (*Id.* ¶¶ 14–15.)

On June 29, 2018, at approximately 10:05 a.m., Defendants purchased 23,900 shares of New Concept Common Stock; in combination with Defendants' previously acquired shares, this purchase increased Defendants' total holdings of New Concept Common Stock to more than 10% of all outstanding shares. (*Id.* ¶ 26.)[4] During the time period following that June 29 purchase, and ending at approximately 9:40 a.m. on July 3, 2018 (referred to herein as the "New Concept short-swing trading period"), Defendants engaged in several thousand purchase and sale transactions in New Concept Common Stock. (*Id.* ¶¶ 26–27.) Because the price of New Concept Common Stock increased dramatically during the New Concept short-swing trading period (from a price of $1.37 per share on June 27, 2018 to $12.75 per share on July 3, 2018), Defendants derived an estimated $6,000,000 in profits from these transactions. (*Id.* ¶¶ 21, 28.) On July 3, 2018, at approximately 9:40 a.m., Defendants sold 1,400 shares of New Concept Common Stock, thereby reducing their ownership to less than 10% of all outstanding shares. (*Id.* ¶ 26.)

---

[4] New Concept gathered this trading data from the schedule of trades listed in Defendants' Schedule 13D. (*See* New Concept Compl. ¶¶ 20, 26.)

## II.     **Procedural History**

On August 13, 2018, Avalon filed a complaint against Gentile and MintBroker, alleging violations of Section 16(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78p(b), and seeking disgorgement of all of Defendants' short-swing profits.  (Doc. 1.)[5]  Avalon filed an amended complaint on September 28, 2018.  (Doc. 19.)  On the same day, New Concept filed a complaint that also alleged a violation of § 16(b) of the Exchange Act against both Defendants, (No. 18-cv-8896, ECF No. 1), as well as a Statement of Relatedness, which explained that both actions arose "from a pattern of unlawful securities trading [specifically, the execution of trades resulting in unlawful short-swing profits] by the same Defendants," (No. 18-cv-8896, ECF No. 3).  Plaintiffs further explained that "[i]n both cases, Defendants realized significant profits using the same (or a substantial[ly] similar) manipulative trading system, by which the Defendants also became statutory 'insiders' of both Plaintiffs."  (*Id.*)  On October 6, 2018, I accepted the New Concept action as related to the Avalon action.

On December 27, 2018, Defendants filed the instant motion[6]—along with a memorandum of law and a declaration with supporting exhibits—seeking dismissal of Plaintiffs' claims pursuant to Rule 12(b)(3) for improper venue, or in the alternative, pursuant to Rule 12(b)(6) for failure to state a claim.  (Docs. 27–30.)[7]  On December 31, 2018, Plaintiffs requested limited discovery with respect to the venue issues raised in Defendants' motion.  (Doc.

---

[5] Avalon's original complaint also alleged a violation of § 13(d) of the Exchange Act, which requires persons having beneficial ownership of more than 5% of the equity securities of any publicly traded company to file certain disclosures with the SEC.  (*See* Doc. 1, ¶¶ 16–29.)  Avalon's Amended Complaint does not include the § 13(d) claim.  (*See* Doc. 19.)  The original complaint also alleged claims against "John Does 1 thru 10."  (Doc. 1.)  Avalon voluntarily dismissed these John Doe defendants on August 28, 2018.  (Doc. 12.)

[6] Defendants filed a single motion to dismiss both the Avalon action and the New Concept action as the arguments raised in Defendants' motion apply equally to both actions.  (*Compare* Docs. 27–30, *with* No. 18-cv-8896, ECF Nos. 20–23.)

[7] The Clerk of Court rejected Defendants' original motion to dismiss, (Doc. 22), as incorrectly filed.  Defendants then re-filed the motion and all supporting documents, (Docs. 27–30), on January 22, 2019.

23.)  Specifically, Plaintiffs requested inspection of all trade tickets, brokerage confirmations, and statements for all purchase and sale transactions by Defendants that occurred during the respective short-swing trading periods in an effort to conclusively confirm that Defendants' trades occurred in this district.  (*Id*.)  Defendants submitted a letter in opposition to Plaintiffs' discovery request on January 8, 2019.  (Doc. 25.)  On January 9, 2019, I denied Plaintiffs' request for limited discovery and noted that I "intend[ed] to rule on that aspect of Defendants' motion to dismiss . . . on the basis of the parties' papers."  (Doc. 26.)  Plaintiffs filed their opposition to the motion to dismiss, along with two supporting appendices, on January 29, 2019.  (Doc. 32.)  Defendants submitted their reply on February 12, 2019.  (Doc. 33.)

### III.    Motion to Dismiss for Improper Venue

#### A.    *Legal Standard*

The legal standard for a motion to dismiss for improper venue is the same as the standard for a motion to dismiss for lack of personal jurisdiction.  *See Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 355 (2d Cir. 2005).  "When a defendant challenges either the jurisdiction or venue of the court, the plaintiff bears the burden of showing that both are proper."  *Casville Invs., Ltd. v. Kates*, No. 12 Civ. 6968(RA), 2013 WL 3465816, at *3 (S.D.N.Y. July 8, 2013) (citing *DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001); *Savoy Senior Hous. Corp. v. TRBC Ministries*, 401 B.R. 589, 596 (S.D.N.Y. 2009)).  "Absent an evidentiary hearing, the plaintiff need only make a *prima facie* showing that venue is proper."  *Sepanski v. Janiking, Inc.*, 822 F. Supp. 2d 309, 313 (W.D.N.Y. 2011) (citing *Gulf Ins. Co.*, 417 F.3d at 355).  "[I]n deciding a motion to dismiss for improper venue, the 'court may examine facts outside the complaint to determine whether venue is proper.  The court must draw all reasonable inferences and resolve all factual conflicts in favor of the plaintiff.'"  *Concesionaria DHM, S.A. v. Int'l Fin.*

6

*Corp.*, 307 F. Supp. 2d 553, 555 (S.D.N.Y. 2004) (quoting *EPA ex rel. McKeown v. Port Auth.*, 162 F. Supp. 2d 173, 183 (S.D.N.Y. 2001)).

### B.   *Application*

Defendants contend that, pursuant to 28 U.S.C. § 1391, venue is not proper in this district because none of the underlying events on which either the Avalon or the New Concept actions are premised occurred here. (*See* Defs.' Br. 9–12.)[8] However, I find that Defendants' alleged trading of Plaintiffs' stock on the NYSE provides a basis for venue in this district.

As an initial matter, Defendants fail to apply the appropriate legal standard in conducting their venue analysis. Defendants ignore the specific venue statue, 15 U.S.C. § 78aa, which governs securities actions. "Section 1391 governs 'venue generally,' that is, in cases where a more specific venue provision does not apply." *Atl. Marine Constr. Co. v. U.S. Dist. Court for W. Dist. of Tex.*, 571 U.S. 49, 55 n.2 (2013). However, in actions pursuant to the Exchange Act—including claims alleging violations of § 16(b)—venue is governed by 15 U.S.C. § 78aa. *See SST Glob. Tech., LLC v. Chapman*, 270 F. Supp. 2d 444, 452 (S.D.N.Y. 2003) ("Venue with regard to securities law claims under the Securities Exchange Act is controlled exclusively by 15 U.S.C. § 78aa, without regard to the general venue provisions of 28 U.S.C. § 1391."); *see also C.R.A. Realty Corp. v. Gold Reserve Corp.*, No. 88 CIV. 4297 (MP), 1988 WL 144752, at *1 (S.D.N.Y. Sept. 14, 1988) (analyzing § 16(b) claim under § 78aa). Section 78aa provides that a civil action may be brought in any district where: (1) "any act or transaction constituting the violation occurred"; (2) the defendant is "found"; (3) the defendant is an "inhabitant"; or (4) the defendant "transacts business." 15 U.S.C. § 78aa. The Second Circuit has held that "the

---

[8] "Defs.' Br." refers to Defendants' Memorandum of Law in Support [of] Motion to Dismiss Under Fed. R. Civ. P. 12(b)(3) and in the Alternative to Transfer Under 28 U.S.C. § 1406 and in Support of Defendants' Motion to Dismiss Under Fed. R. Civ. P. 12(b)(6), filed January 22, 2019. (Doc. 28.)

7

execution of [relevant] trades on the New York Stock Exchange and American Stock Exchange is sufficient to establish venue in the Southern District of New York," pursuant to § 78aa. *United States v. Svoboda*, 347 F.3d 471, 484 (2d Cir. 2003).

I find that Plaintiffs have met their *prima facie* burden of demonstrating that venue is proper in this district under § 78aa on the ground that an "act or transaction constituting the violation" occurred here.  In each of the Complaints, Plaintiffs allege that their common stock was "traded on the [NYSE], a National Securities Exchange located within this district" and that "[a]ll or nearly all of the purchases or sales to be described herein took place upon such exchange."  (Avalon Compl. ¶ 13; *see also* New Concept Compl. ¶ 4 ("At all times relevant the common stock of New Concept . . . was traded . . . on the NYSE[], a National Securities Exchange located within this district.  All or most of the purchases or sales to be described took place upon such exchange.").)

Plaintiffs correctly argue that many courts, including the Second Circuit, have concluded that trading on the New York Stock Exchange is sufficient to confer venue in this district.  *See, e.g.*, *Svoboda*, 347 F.3d at 484.  In *United States v. Svoboda*, the Second Circuit noted that "this conclusion is consistent with a number of district court decisions in this Circuit that have upheld venue [pursuant to §78aa] where the only relevant contact to the venue was that various trades were executed in the district."  *Id.* n.13 (citing *SEC v. Thrasher*, 1993 WL 37044, at *2 (S.D.N.Y. Feb. 8, 1993) (citing *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Rajcher*, 609 F. Supp. 291, 293 (S.D.N.Y. 1985); *Blau v. Lamb,* 242 F. Supp. 151, 159–60 (S.D.N.Y.1965), *rev'd in part on other grounds*, 363 F.2d 507 (2d Cir. 1966))).

With respect to alleged violations of § 16(b) specifically, the Second Circuit has determined that an "act or transaction constituting the violation" occurs in the district where the

8

exchange on which the challenged purchases and/or sales were executed is located. *See Gratz v. Claughton*, 187 F.2d 46, 49 (2d Cir. 1951) ("The defendant's argument that no 'act or transaction constituting the violation occurred' in the Southern District . . . rests upon the assumption that the wrong consists in failing to turn over the profits to the corporation.  In fact it is obtaining the profits by the wrongful purchase and sale, or sale and purchase, of shares; and those acts took place on the floors of the New York Exchanges where by his orders the transactions took place."); *see also C.R.A. Realty Corp.*, 1988 WL 144752, at *1 (finding that "the allegedly unlawful short swing transactions took place in Spokane, Washington, using the facilities of the Spokane Stock Exchange"); *Blau*, 242 F. Supp. at 159; *cf. Shapiro v. Santa Fe Gaming Corp.*, No. 97 C 6117, 1998 WL 102677, at *2 (N.D. Ill. Feb. 27, 1998) (finding it to be "settled that the consummation of an illegal short-swing transaction over a national exchange satisfies the 'act or transaction constituting the violation' clause of § 78aa," and concluding that venue would therefore be proper "either in Nevada [where defendant was headquartered] or in New York—on the American Stock Exchange," where the shares in question were traded).  Thus, by alleging that "[a]ll or nearly all" of the relevant purchases and sales "took place upon" the NYSE, (Avalon Compl. ¶ 13; *see also* New Concept Compl. ¶ 4), Plaintiffs have made out a *prima facie* case that venue is proper in this district.  *Cf. Laborers Local 100 & 397 Pension Fund v. Bausch & Lomb Inc.*, No. 06 Civ.1942(HB), 2006 WL 1524590, at *4 (S.D.N.Y. June 5, 2006) (noting that the NYSE is "located in the SDNY").

      In an effort to counter the legal authority cited by Plaintiffs, Defendants rely exclusively on various online news articles which suggest that, since 2010, "the vast majority of trading [at the NYSE] no longer takes place on the floor of the exchange on the corner of Broad St. and Wall St. [in Manhattan], but rather in data centers located in northern New Jersey."  (Ford Decl.

9

¶ 6; *see also id.* Ex. C.)[9]  As an initial matter, Defendants have submitted these articles for the truth of the statements asserted therein (i.e., that the majority of the NYSE's operations have been relocated to New Jersey), but have pointed to no authority suggesting that it would be appropriate for me to consider them for that purpose.  *See, e.g.*, *Jackson v. Jimino*, 506 F. Supp. 2d 105, 113 (N.D.N.Y. 2007) (stating that "hearsay, and news articles in particular" are inadmissible when "offered for the truth asserted"); *Holmes v. Gaynor*, 313 F.Supp.2d 345, 358 n.1 (S.D.N.Y. 2004) ("The newspaper article, however, is hearsay and inadmissible for proving the truth of the matters asserted therein."); *McAllister v. N.Y.C. Police Dep't*, 49 F. Supp. 2d 688, 705 n.12 (S.D.N.Y. 1999) ("Newspaper articles are hearsay . . . and . . . are not admissible evidence .").

More importantly, however, even assuming it would be appropriate for me to consider these news articles for the truth of the matter asserted, the articles do not unequivocally state that *all* of the relevant NYSE operations had moved out of this district such that no "act or transaction constituting the violation," 15 U.S.C. § 78aa, could have occurred here.  (*See* Ford Decl. Ex. C (explaining that "the NYSE still retains its physical trading floor on Wall Street in New York City"); *id.* (noting that "the several dozen remaining floor specialists" who continue to work on the NYSE floor in Manhattan "aren't there entirely for show," but rather provide "security and accountability that a wholly electronic exchange cannot offer").)  Thus, Defendants' cited news articles leave open the possibility that at least some of the NYSE's key operations continue to take place at its Manhattan headquarters.  Defendants also fail to identify any legal authority holding that, because of the purported move of certain NYSE operations to

---

[9] "Ford Decl." refers to the Declaration of Adam C. Ford in Support of Guy Gentile's and MintBroker International Limited's Motion to Dismiss, filed January 22, 2019.  (Doc. 29.)

10

New Jersey, venue is proper in the District of New Jersey where the only relevant conduct is the execution of trades on the NYSE.  Because I am bound to draw all reasonable inferences in Plaintiffs' favor on a motion to dismiss for improper venue, *see Concesionaria*, 307 F. Supp. 2d at 555, I find that the information cited by Defendants does not overcome Plaintiffs' *prima facie* showing that venue is proper in this district pursuant to § 78aa.[10]  Accordingly, Defendants' motion to dismiss this action pursuant to Federal Rule of Civil Procedure 12(b)(3) is denied.[11]

### IV.    Motion to Dismiss for Failure to State a Claim

#### A.    *Legal Standard*

##### 1.    Federal Rule of Civil Procedure 12(b)(6)

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim will have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  This standard demands "more than a sheer possibility that a defendant has acted unlawfully."  *Id.*  "Plausibility . . . depends on a host of considerations: the full factual picture presented by the complaint, the particular cause of action and its elements,

---

[10] Defendants further contend that "all Defendants' trades were placed with brokers in either New Jersey or Connecticut."  (Reply Br. 1.)  ("Reply Br." refers to Defendants' Reply Memorandum of Law in Support of Motion to Dismiss Under Fed. R. Civ. P. 12(b)(3) and in the Alternative to Transfer Under 28 U.S.C. § 1406 and in Support of Defendants' Motion to Dismiss Under Fed. R. Civ. P. 12(b)(6), filed February 12, 2019.  (Doc. 33.).)  However, Defendants introduce no affidavits or other exhibits in support of this assertion and I therefore decline to consider it.  *See Quinn v. Fishkin*, 117 F. Supp. 3d 134, 138 (D. Conn. 2015) ("[T]he court must take all allegations in the complaint as true, unless contradicted by the defendants' affidavits . . . ." (internal quotation marks omitted)).

[11] I need not address Defendants' request to transfer this action to the District of Puerto Rico pursuant to 28 U.S.C. § 1406, (*see* Defs.' Br. 12), as that provision applies only where venue is not proper in the district where the action was originally filed, *see* 28 U.S.C. § 1406(a) (providing that where a case is filed "laying venue in the wrong division or district," the district court must either dismiss the action, "or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought").

11

and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir. 2011).

In considering a motion to dismiss, a court must accept as true all well-pleaded facts alleged in the complaint and must draw all reasonable inferences in the plaintiff's favor. *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007). A complaint need not make "detailed factual allegations," but it must contain more than mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). Finally, although allegations contained in a complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Id.*; *see also Rolon v. Henneman*, 517 F.3d 140, 149 (2d Cir. 2008) (courts are "not bound to accept 'conclusory allegations or legal conclusions masquerading as factual conclusions'" (quoting *Smith v. Local 819 I.B.T. Pension Plan,* 291 F.3d 236, 240 (2d Cir. 2002))). A complaint is "deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) (citation omitted).

### 2. Section 16(b) of the Exchange Act

Pursuant to Section 16(b) of the Exchange Act, an insider's so-called "short swing profits" are subject to disgorgement. *See* 15 U.S.C. § 78p(b). Statutory insiders include directors, officers, and "beneficial owners" of more than 10% of any class of a company's registered equity securities. *Id*. § 78p(a)(1). Section 16(b) provides:

> For the purpose of preventing the unfair use of information which may have been obtained by such beneficial owner, director, or officer . . . , any profit realized by him from any purchase and sale, or any sale and purchase, of any equity security of such issuer (other than an exempted security) . . . within any period of less than six months, . . . shall inure to and be recoverable by the issuer, irrespective of any intention on the part of such beneficial owner, director, or officer in entering into such transaction . . . .

12

*Id*. § 78p(b).  Because § 16(b) is "intended to prevent the defined insiders from profiting from short-swing variations in share price," it "imposes a strict-liability rule for disgorgement of profits."  *Lowinger v. Morgan Stanley & Co.*, 841 F.3d 122, 129 (2d Cir. 2016).

Liability under § 16(b) requires "(1) a purchase and (2) a sale of securities (3) by a statutory insider (4) within a six-month period."  *Roth v. Solus Alt. Asset Mgmt. LP*, 124 F. Supp. 3d 315, 321 (S.D.N.Y. 2015) (citing *Roth v. Goldman Sachs Grp., Inc.*, 740 F.3d 865, 869 (2d Cir. 2014)).  In a case involving a challenged purchase followed by a sale within a six-month period, the insider's holdings must have exceeded the 10% threshold prior to the challenged purchase.  *See* 15 U.S.C. § 78p(b) ("This subsection shall not be construed to cover any transaction where such beneficial owner was not such both at the time of the purchase and sale, or the sale and purchase, of the security . . . ."); *Foremost-McKesson, Inc. v. Provident Sec. Co.*, 423 U.S. 232, 249–50 (1976) ("We hold that, in a purchase–sale sequence, a beneficial owner must account for profits only if he was a beneficial owner 'before the purchase.'").

### B. *Application*

Defendants argue the Complaints should be dismissed for failure to state a claim because "Section 16(b) was clearly not designed to recover profits made from high-frequency trading positions by briefly-tenured shareholders with no connection to an issuer and no conceivable opportunity to obtain inside information."  (Defs.' Br. 13.)  Defendants fail to cite to case law that directly supports this proposition.  Instead, Defendants cite cases that invoke the broad proposition that "[w]hen a transaction does not fall within the literal terms of Section 16(b), the statute must be interpreted in a way that is consistent with its legislative purpose"—that is, preventing "the realization of short-swing profits based upon access to insider information."  (Defs.' Br. 12–13 (quoting *Chechele v. Sperling*, No. 11 Civ. 0146(PAC), 2012 WL 1038653, at

13

*1 (S.D.N.Y. Mar. 29, 2012)).) However, it appears that, based on the allegations set forth in the Complaints, the transactions at issue *do* fall within the "literal terms of Section 16(b)." Defendants do not seriously contest the conclusion that they satisfy § 16's definition of "insider"—i.e., a "person who is directly or indirectly the beneficial owner of more than 10 percent of any class of any equity security." 15 U.S.C. § 78p(a)(1).[12] Rather, they argue that they maintained that status for too brief a time period to practically benefit from it.

Assuming *arguendo* that Defendants did not have access to inside information during their brief period of beneficial ownership, there is no indication that this fact would relieve Defendants of liability under § 16(b). As the Second Circuit has explained,

> [P]ursuant to § 16(b), when a stock purchaser chooses to acquire a 10% beneficial ownership stake in an issuer, he becomes a corporate insider and thereby accepts the limitation that attaches to his fiduciary status: not to engage in any short-swing trading in the issuer's stock. At that point, injury depends not on whether the § 16(b) fiduciary traded on inside information, but on whether he traded at all.

*Donoghue v. Bulldog Inv'rs Gen. P'ship*, 696 F.3d 170, 177 (2d Cir. 2012) (internal quotation marks omitted); *see also id.* ("[Section] 16(b) operates without regard to whether the statutory fiduciaries were actually privy to inside information or whether they traded with the intent to profit from such information."); *Magma Power Co. v. Dow Chem. Co.*, 136 F.3d 316, 320–21 (2d Cir. 1998) (explaining that § 16(b) "operates mechanically, and makes no moral distinctions, penalizing technical violators of pure heart, and bypassing corrupt insiders who skirt the letter of the prohibition"). In other words, having purchased a sufficient number of Plaintiffs' shares to qualify as "beneficial owners," Defendants were barred from short-swing trading, regardless of

---

[12] Defendants contend that "[s]ome or all of the trades at issue involved computer-driven short selling and never, in fact, settled." (Defs.' Br. 14.) Not only do Defendants make no attempt to specify which, or how many, of the thousands of alleged trades did not settle, but evaluation of this fact-based argument is clearly improper at the motion-to-dismiss stage, where all well-pleaded factual allegations set forth in Plaintiffs' Complaints must be accepted as true. *See Kassner*, 496 F.3d at 237. Furthermore, Defendants cite no legal authority for their argument that the failure of certain trades to settle would affect their liability under § 16(b).

whether they in fact had access to inside information.[13]  I therefore decline to reach the novel conclusion that, as a matter of law, "high-frequency trading positions by briefly-tenured shareholders" such as Defendants, (Defs.' Br. 13), fall outside the ambit of § 16(b).  Accordingly, Defendants' motion to dismiss pursuant to Rule 12(b)(6) is denied.

V.     **Conclusion**

For the foregoing reasons, Defendants' motion to dismiss Plaintiffs' Complaints pursuant to Fed. R. Civ. P. 12(b)(3) and 12(b)(6) is DENIED.  The Clerk of Court is respectfully directed to terminate the motion pending at Document 27 (Case No. 18-cv-7291) and Document 20 (Case No. 18-cv-8896).

SO ORDERED.

Dated: September 24, 2019
       New York, New York

_____
Vernon S. Broderick
United States District Judge

---

[13] Defendants also fail to cite any legal authority establishing a minimum amount of time during which a shareholder must maintain its 10% beneficial ownership status for liability to attach under § 16(b).