UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NEW CONCEPT ENERGY, INC.<br><br>                        Plaintiff,<br><br>                           v.<br><br>GUY GENTILE and<br>MINTBROKER INTERNATIONAL, LTD.,<br><br>                        Defendants. | No. 18-cv-8896 (VSB) (RJL)<br><br>ECF Case |

Related to:

| | |
|---|---|
| AVALON HOLDINGS CORP.,<br><br>                        Plaintiff,<br><br>                           v.<br><br>GUY GENTILE and<br>MINTBROKER INTERNATIONAL, LTD.,<br><br>                        Defendants. | No. 18-cv-7291 (VSB) (RJL)<br><br>ECF Case |

**BRIEF IN SUPPORT OF PLAINTIFF NEW CONCEPT ENERGY, INC.'S
CALCULATION OF DAMAGES, AND MOTION FOR ENTRY OF JUDGMENT**

David Lopez (DL-6779)
LAW OFFICES OF DAVID LOPEZ
171 Edge of Woods Road | P.O. Box 323
Southampton NY 11969-0323
(631) 287-5520 | DavidLopezEsq@aol.com

Miriam Tauber (MT-1979)
MIRIAM TAUBER LAW PLLC
885 Park Ave. # 2A
New York NY 10075
(323) 790-4881| MiriamTauberLaw@gmail.com

*Attorneys for Plaintiff New Concept Energy, Inc.*

# **TABLE OF CONTENTS**

Table of Authorities   ……………………………………………………………………………ii

A. OVERVIEW……………………………………………………………………………...1

  1. Procedural History ……………………………………………………………………….1

  2. The Short Swing Trading Statute……………………………………………………………….2

B. DEFENDANTS'§16(b) PROFITS TO BE DISGORGED TO NEW CONCEPT…………….3

   1. Defendants' "Beneficial Ownership" Increased (or Decreased)
      When Their Purchases (or Sales) Were Executed, Irrespective of Settlement……………...3

   2. Defendants' Insider Status Is Demonstrated by Their Executed Transactions……………...4

   3. Every Trade Executed While Defendants Were Beneficial Owners of More
      Than 10% of GBR Class A Common Stock Is a Matchable §16(b) Transaction……..………6

   4. Profits are Computed by Applying the
      Well-Established "Lowest-In, Highest-Out" Methodology…………………………………8

C. PLAINTIFF IS ENTITLED TO PREJUDGMENT INTEREST………………………….9

CONCLUSION………………………………………………………………………...…11

# **TABLE OF AUTHORITIES**

**CASES**

*Analytical Surveys, Inc. v. Tonga Partners, L.P.*,
　No. 06-CV-2692 (KMW), 2008 WL 4443828 (S.D.N.Y. Sept. 29, 2008) ...............................10

*Donoghue v. MIRACOR Diagnostics, Inc.*,
　No. 00-CV-6696 (JGK), 2002 WL 233188 (S.D.N.Y. Feb. 11, 2002) ......................................9

*Chechele v. Standard General L.P.*,
　No. 20-CV-3177 (KPF), 2021 WL 2853438 (S.D.N.Y. July 8, 2021)........................................8

*Foremost-McKesson, Inc. v. Provident Securities Co.*,
　423 U.S. 232 (1976) ...................................................................................................................7

*Huppe v. Special Situations Fund III QP, L.P.*,
　565 F. Supp. 2d 495 (S.D.N.Y. 2008) ......................................................................................10

*Lewis v. Realty Equities Corp. of N.Y.*,
　396 F. Supp. 1026 (S.D.N.Y. 1975) ...........................................................................................9

*Microbot Medical, Inc. v. Mona*,
　No. 19-CV-3782 (GBD) (RWL), 2021 WL 1192110 (S.D.N.Y. Mar. 30, 2021).......................5

*Roth v. Jennings*,
　No. 03-CV-7760 (DAB), 2009 WL 1440670 (S.D.N.Y. May 21, 2009)....................................9

**STATUTES**

15 U.S.C. §78m ................................................................................................................................3
15 U.S.C. §78p. ............................................................................................................................1,2

**RULES**

17 C.F.R. §240.13d-3 .......................................................................................................................3
17 C.F.R. §240.16a-1........................................................................................................................3
17 C.F.R. §240.16a-2........................................................................................................................5
17 C.F.R. §240.16a-10......................................................................................................................7

**TREATISES**

Peter J. Romeo & Alan L. Dye,
　*Section 16 Treatise and Reporting Guide* 5th ed. (2019).......................................................7, 8

A. **OVERVIEW**

1. **Procedural History**

These actions were brought under Section 16(b) of the Securities Exchange Act of 1934, 15 U.S.C. §78p(b). Section 16(b) is a strict liability statute designed to prevent "short swing" trading by statutory "insiders" of public companies—including "beneficial owners" of more than 10% of any class of a company's outstanding stock—by requiring insiders to disgorge all profits realized from any purchases and sales of the company's securities within a period of less than six months.

On April 8, 2022, the Court granted Plaintiffs' Motions for Summary Judgment in these related cases, which were brought by two different Plaintiff companies against the same two Defendants based on their similar pattern of trading each Plaintiff's stock. The Court found Defendants liable for short swing trading profits realized while they were more-than-10% "beneficial owners" of each Plaintiff's common stock, as reflected by the trading reported in Defendants' Schedule 13D (Ex. F), which was corroborated by their Interactive Brokers ("IB") account statements (Ex. D & Ex. E).[1] (*See also* Joint Stipulation, Ex. B (as filed at Dkt #55) ¶¶ 1-2) (stipulating that the trading reported by Defendants on Sched. 13D is consistent with the trading reflected on their IB statements).

Following entry of Judgment for both Plaintiffs, the Court referred the cases to Your Honor for a determination of the amount of Defendants' liability to each. (*See* Order, Dkt #88.)

---

[1] Unless otherwise indicated, references to "Exhibits" or "Ex." throughout this Brief refer to Exhibits to the Affidavit of Miriam Tauber in Support of Plaintiff's Motion for Summary Judgment. (Dkt #69.)

1

This Brief is submitted pursuant to the Court's Order in support of Plaintiff New Concept Energy, Inc.'s calculation of Defendants' disgorgeable profits at **$6,102,002.** Pre-judgment interest is calculated to be an additional **$1,077,315,** for a total award of **$7,309,058.**

**2. The Short Swing Trading Statute**

Section 16(a), 15 U.S.C. §78p(a), provides:

Every person who is directly or indirectly the beneficial owner of more than 10 percent of any class of any equity security (other than an exempted security) which is registered pursuant to section 78*l* of this title, or who is a director or an officer of the issuer of such security, shall file the statements required by this subsection with the Commission.

The filings required by §16(a) include the "Initial Statement of Beneficial Ownership" on SEC Form 3, which Defendants filed on June 19, 2018, and the Form 4 reports filed on July 3 and July 5, 2018.

Section 16(b) provides (in pertinent part):

For the purpose of preventing the unfair use of information which may have been obtained by such beneficial owner, director, or officer by reason of his relationship to the issuer, any profit realized by him from any purchase and sale, or any sale and purchase, of any equity security of such issuer … within any period of less than six months, … , shall inure to and be recoverable by the issuer, irrespective of any intention on the part of such beneficial owner, director, or officer in entering into such transaction of holding the security … purchased or of not repurchasing the security … sold for a period exceeding six months.

Suit to recover such profit may be instituted at law or in equity in any court of competent jurisdiction by the issuer … .

This subsection shall not be construed to cover any transaction where such beneficial owner was not such both at the time of the purchase and sale, or the sale and purchase, of the security … involved, or any transaction or transactions which the Commission by rules and regulations may exempt as not comprehended within the purpose of this subsection. 15 U.S.C. §78p(b).

B. **DEFENDANTS' §16(b) PROFITS TO BE DISGORGED TO NEW CONCEPT**

1. **Defendants' "Beneficial Ownership" Increased (or Decreased) When Their Purchases (or Sales) Trade Were Executed, Irrespective of Settlement**

The Court rightly held that the Defendants acquired "beneficial ownership" of shares when they executed purchase orders for those shares—regardless of when (or whether) the trades "settled," or the shares were delivered to the Defendants. As the Court summarized, SEC Rule 16a-1(a)(1), 17 C.F.R. §240.16a-1, governs the determination of whether Defendants' "beneficial ownership" exceeded the 10% threshold provided by §16(a), subjecting them to short swing trading restrictions under §16(b) as "insiders"—and refers to the definition of "beneficial ownership" under Section 13(d) of the Securities Exchange Act, 15 U.S.C. §78m. Defendants reported their "beneficial ownership" of New Concept stock under §13(d) on their Schedule 13D filed on September 17, 2018. (Ex. F).

SEC Rule 13d-3(a) defines "beneficial ownership" for purposes of §13(d) to include "investment power, which includes the power to dispose, or to direct the disposition of, such security." Rule 13d-3(d)(1)(i) further includes within a shareholder's "beneficial ownership" any security that a shareholder has the right to acquire beneficial ownership of within 60 days. *See* 17 C.F.R. §240.13d-3. (Order p.22).

The Court held:

> "'Beneficial ownership' under §16(b) does not look at the shares the investors actually purchased or possessed; rather, it looks at whether the investor has investment power and/or voting power in those shares. 17 C.F.R. §240.13d-3(a). Defendants had 'investment power' over these shares—even before the transactions were settled—because they had the power to dispose [of] them, as admitted by Gentile himself (Gentile Dep. Tr. [Ex. A] 105:16-106:9) and shown by the fact that they successfully sold these shares on the market." (Id. p.23).

The Court rejected Defendants' assertion that they were never "beneficial owners" of shares they purchased and sold within the "T+2" settlement period. (*See* id. p.6) ("the standard

3

settlement cycle for broker-dealer securities transactions is 'trade date plus two business days,' also referred to as the 'T+2' schedule. This means that when an investor buys or sells a security, the brokerage firm must receive payment or delivery of the security (i.e., 'settle') no later than two business days after the trade is executed").

The Court also rejected the Defendants' argument that they could not have been "beneficial owners" of more shares than were available to trade. As the Court observed, the operation of SEC Rule 13d-3(d) creates the accepted (if "anomalous") result that some transactions may create "two beneficial owners" of the same shares, for purposes of §13(d) and the §16(b) threshold: " [i] the current owner, and [ii] the person[s] who have the right to acquire them [from the current owner] within 60 days." (Order p.23.)

Indeed, in this case, Defendants' "short squeeze" worked precisely by purchasing a substantial portion of the Plaintiff's shares and then buying these same shares from "short sellers" who were forced to "cover" their short sales to Defendants by buying the shares from the Defendants themselves. (*See* id. p.19) ("Defendant Gentile stated that he 'believes' that many of the shares he transacted were shorted, and that 'had he not sold the shares, they would have all failed [to settle].' (Gentile Dep. Tr. [Ex. A] 89:20-24.) However, that begs the question since Gentile did sell all of the shares …").

2. **Defendants' Insider Status Is Demonstrated by Their Executed Transactions**

Immediately upon execution of their purchases at the dates and times indicated on their brokerage statements, Defendants had the right to sell those shares, and thus "investment control" constituting "beneficial ownership" of the shares for purposes of §16(a) and SEC Rule 16a-1. Accordingly, every executed purchase of shares by the Defendants counted towards the

4

10% beneficial ownership threshold, and every executed sale likewise reduced Defendants' beneficial ownership for purposes of determining when the 10% threshold was crossed.

Consistent with a long line of authority, the Court also held that Defendants' purchases and sales occurred for purposes of §16(b) upon execution of their trades, regardless of settlement. (*See* Order pp.14-15) (collecting cases and concluding that "it is the moment the trading decision is made, instead of the 'technicalities of stock transfers, such as the passing of title or the exchange of the shares,' that governs the construction of §16(b)"). *See also Microbot Medical, Inc. v. Mona*, No. 19-cv-3782 (GBD) (RWL), 2021 WL 1192110, at *5 (S.D.N.Y. Mar. 30, 2021) ("the date of execution is the operative date and Magistrate Judge Lehrburger's short-swing calculations are correct"). As the Court held, upon execution of their purchases and sales, Defendants were irrevocably bound to these transactions and locked in their opportunity to profit from these trades. Defendants' reaping of these profits further establishes their "pecuniary interest" in the shares traded under §16(b) and SEC Rule 16a-2, 17 C.F.R. §240.16a-2. (Order pp.23-24.)

Defendants reported their transactions in their Schedule 13D filed on August 22, 2018, and they also produced a spreadsheet of these reported transactions (Ex. F & Ex. G). These trades were executed through Defendants' Interactive Brokers trading accounts, as reflected in the statements produced by IB. (Ex. D & Ex. E.) Defendants have stipulated that the trading they reported was derived from and is consistent with the trading reflected on their IB statements. (*See* Joint Stipulation, Ex. B, at ¶¶1-2).

Exhibit H was compiled by sorting all of the Interactive trading appearing on the statements for their two IB accounts (Ex. D & Ex. E) in chronological order. The "Total Shares" count (at Column F) was generated by adding the shares purchased and subtracting shares sold following each executed purchase or sale transaction. Under Federal Rule of Evidence (F.R.E.)

1006, The Court may take judicial notice of Ex. H, which summarizes the voluminous data appearing in Mintbroker's Interactive brokerage records, as the originals are available to the Court at Ex. D & Ex. E.

As indicated on Ex. H, Defendants' first trade of GBR Class A Common Stock was on May 24, 2018; and their last trade was on September 24, 2018. New Concept's SEC filings state that there were a total of 2,131,935 shares of Class A Common Stock outstanding on May 11, 2018, until November 14, 2018. (*See* New Concept Form 10-Q/A, *filed* May 15, 2018; Form 10-Q *filed* Aug. 13, 2018; Form 14/A, *filed* Sept. 4, 2018; Form 10-Q *filed* Nov. 14, 2018 (excerpts attached as Exhibit 1 to the Affirmation of David Lopez accompanying this Brief).

Exhibit H calculates Defendants' percentage-ownership following each trading, by dividing the total shares column by the number of outstanding Class A Common Stock, or 2,131,935. For ease of reference, Column F displays this number as a percentage. As indicated on Ex. H:

- Defendants *acquired beneficial ownership of more than 10%* of outstanding GBR Class A Common Stock by their executed purchase of 10,000 shares @ $2.30464/share, **on June 29, 2018, at 10:05:33 AM** (Row #216).

- Defendants *crossed back under the 10% threshold* by their sale of 770 shares @ $7.51260/share*, on July 3, 2018, at 9:38:17 AM* (Row #1432).

3. **Every Trade Executed While Defendants Were Beneficial Owners of More Than 10% of GBR Class A Common Stock Is a Matchable §16(b) Transaction**

The last sentence of §16(b) provides that more-than 10% beneficial owner insiders are subject to §16(b) only when they are "such beneficial owners" at the time of both purchase and sale. The Supreme Court has held that the purchase by which a shareholder crosses the 10% ownership threshold is excluded from §16(b), as executed before the shareholder owned more than

6

10%. *Foremost-McKesson, Inc. v. Provident Securities Co.*, 423 U.S. 232, 254 & n.28 (1976). This holding is also codified at SEC Rule 16a-2(c), 17 C.F.R. §240.16a-2, which provides:

> "The transaction that results in a person becoming a ten percent beneficial owner is not subject to section 16 of the Act unless the person otherwise is subject to section 16 of the Act. A ten percent beneficial owner not otherwise subject to section 16 of the Act must report only those transactions conducted while the beneficial owner of more than ten percent of a class of equity securities of the issuer registered pursuant to section 12 of the Act."[2]

On the other hand, the sale by which an insider crosses back under the 10% threshold is subject to §16(b) as executed while the shareholder was a more-than-10% beneficial owner. Any transactions after that sale are excluded from §16(b) unless and until the 10% threshold is crossed again. *See generally* Peter J. Romeo & Alan L. Dye ("Romeo & Dye"), *Section 16 Treatise and Reporting Guide* 5th ed. §§10.02[2][a]-[c] pp.1006-1012.

To summarize: The trade taking a shareholder's beneficial ownership *over* the 10% threshold is *not* matchable; the trade taking a shareholder *under* the 10% threshold *is* matchable.

Applying this principle to Defendants' trading, all of Defendants' executed transactions during the time periods below, appearing at the following rows of Ex. H, were subject to §16(b):

| Included Transactions: | Ex. H. Rows |
|---|---|
| All transactions executed *after* Defendants' executed purchase of 10,000 shares @ $2.30464/share, on June 29, 2018, at 10:05:33 AM (Row #216); *up to and including* their sale of 770 shares @ $7.51260/share, on July 3, 2018, at 9:38:17 AM (Row #1432). | 217-1432 |
| **Total Number of Matchable GBR Transactions: 1,216** | |

---

[2] Transactions not "reportable" by insiders, e.g., transactions excluded under Rule 16a-2(c), are also excluded from §16(b) under Rule 16a-10, 17 C.F.R. §240.16a-10.

4. **Profits are Computed by Applying the
   <u>Well-Established "Lowest-In, Highest-Out" Methodology</u>**

"In light of the 'broadly remedial' purposes of §16(b), the Second Circuit has long applied the rule of 'lowest price in, highest price out,' with the goal of ensuring recovery of 'all possible profits.'" *Chechele v. Standard General L.P.*, et. al., No. 20-cv-3177 (KPF), 2021 WL 2853438, at **10-11 (S.D.N.Y. July 8, 2021) (quoting *Smolowe v. Delendo Corp.,* 136 F.2d 231, 239 (2d Cir. 1943), and *Microbot Medical, Inc. v. Mona*, No. 19-cv-3782 (GBD) (RWL), 2020 WL 8671943 (Dec. 17, 2020)). The methodology for matching multiple purchases and sales is described in further detail at Romeo & Dye §12.02 p.1226. Your Honor recently applied that methodology to calculate the Defendant's §16(b) liability in *Microbot Medical v. Mona*.

**Exhibit M** applies the "lowest-in, highest-out" algorithm described by Romeo & Dye to the 1,216 transactions executed by Defendants while they were subject to §16(b) (i.e., the transactions identified at Ex. H Rows 217-1432 (inclusive). Sales were sorted in order of highest-priced to lowest-price trade; and purchases sorted in order from lowest to highest-priced trade. The lowest-in, highest-out methodology is then applied at Ex. M as follows:

- **Row #1** matches Defendants' highest-priced sale (9 shares @ $13.67/share, on July 3, 2018, at 9:10:32 AM) against their lowest-priced purchase (400 shares @ $2.31/share, on June 29, 2018, at 10:05:43 AM), and calculates the Profit as: (Sale Price) – (Purchase Price), multiplied by the number of "Shares Matched" (i.e., the lesser number of shares purchased or shares sold). <u>Row #1 Profit</u> = $13.67 (Sale Price) –$2.31 (Purch. Price) = $11.36, x 9 Shares Matched (9 shares sold as less than 400 shares purchased) = <u>$102.24.</u>

- **Row #2** matches the remaining shares from the matched transactions at Row #1 (i.e., 391 purchased shares remaining after Defendants' lowest-price purchase of 400 shares was matched against their highest-price sale of 9 shares, at Row #1). Row #2 matches these 391 remaining shares purchased at the lowest price ($2.31); against Defendants' next highest-priced sale (3,000 shares @ $13.65/share, on July 3, 2018, at 9:09:50 AM). <u>Row #2 Profit</u> is again computed as: Sale Price ($13.65) – Purchase Price ($2.31), multiplied by the number of Shares Matched (391) = ($13.65 - $2.31 = $11.34) x 391 = <u>$4,433.94.</u>

8

- **Row #3** then matches the unmatched sold shares remaining after the match at Row #2 (i.e., 2,609 shares remaining from Defendants' sale of 3,000 shares, after 391 shares from that sale were matched against the Defendants' lowest-priced purchased shares at Row #2). These remaining shares are matched against the next lowest-priced purchase (1,300 shares @ $2.31/share, on June 29, 2018, at 10:05:36 AM).

- The algorithm continues in similar fashion until all shares sold are matched with any lower-priced purchases, or all shares purchased are matched against any higher-priced sales. … .

Defendants' **total short swing profits** are calculated on the last page of Ex. M, by adding up the Profit from the matches at every Row on Ex. M, at **$6,102,002. This is the amount of Defendants' statutory liability under §16(b), which must be disgorged in full to New Concept.**

C. <u>**PLAINTIFF IS ENTITLED TO PREJUDGMENT INTEREST**</u>

Prejudgment interest "is generally awarded as part of §16(b) recoveries," [and] the question of whether it should be granted "in a particular case is within the discretion of the trial court." *Roth v. Jennings*, No. 03 Civ. 7760(DAB), 2009 WL 1440670, at *6 (S.D.N.Y. May 21, 2009) (quoting *Morales v. Freund*, 163 F.3d 763, 767 (2d Cir.1999). Courts award prejudgment interest in §16(b) cases based on "considerations of fairness," including "whether the insider acted innocently or knowingly." *Roth*, 2009 WL 1440670, at *6 (quoting *Blau v. Lehman*, 368 U.S. 403, 414 (1962), *and Donoghue v. MIRACOR Diagnostics, Inc.*, No. 00-CV-6696 (JGK), 2002 WL 233188, at *3 (S.D.N.Y. Feb. 11, 2002)).

Courts also consider that the "remedial purpose of §16(b) in "curb[ing] the evils of insider trading" favors strengthening deterrence by [awarding pre-judgment interest and thereby] increasing the damages short-swing traders must pay." *Roth v. Jennings,* 2009 WL 1440670, at *6. Consistent with the statutory purpose, "the insider has the burden of demonstrating good faith" to avoid an award of prejudgment interest in connection with a §16(b) judgment. *Donoghue v. MIRACOR,* 2002 WL 233188, at *3; *see also Lewis v. Realty Equities Corp. of N.Y.*, 396 F.Supp.

9

1026, 1034 (S.D.N.Y. 1975) (prejudgment interest may be denied in §16(b) cases where the violation is not willful, but "the bare allegation of inadvertence" does not suffice).

Defendants' short swing trading in this case was willfully executed as part of a manipulative trading scheme, which cannot be innocently explained, and as to which Defendants have asserted no meaningful—or even logical— defense. (*See* Order p.18) ("Not only is Defendants' position unsupported by the law, it also makes no sense.") This case is in stark contrast to case where prejudgment interest was denied because Defendants were induced to trade by the Company, or engaged in note transactions deemed to constitute purchases and sales of underlying securities under SEC Rules. *Cf., e.g., Analytical Surveys, Inc. v. Tonga Partners, L.P.*, No. 06-CV-2692 (KMW), 2008 WL 4443828, at *17 (S.D.N.Y. Sept. 29, 2008) (declining to award pre-judgment interest where there was no evidence of insider's bad faith in short swing trading involving the amendment of a note constituting a technical violation of §16(b) under the SEC's derivative regulations); *Huppe v. Special Situations Fund III QP, L.P.*, 565 F.Supp.2d 495, 503 (S.D.N.Y. 2008) (prejudgment interest denied where company solicited the insider's transaction giving rise to §16(b) liability).

Here, Defendants engaged in a high-speed trading scheme orchestrated to take the Company and its investors by surprise in accumulating a majority position in Plaintiff's outstanding stock, and to use that position to profit at the expense of other market traders of Plaintiff's stock. This is precisely the type of abusive trading that §16(b) was designed to prevent.

Defendants brazenly asserted that they believed they were trading at speeds "too fast to be captured." (Order p.17.) As the Court held, Defendants have not outsmarted the Securities Exchange Act, and their short swing trading is not above the law of §16(b).

Defendants are strictly required to disgorge their short swing trading profits and should not be entitled to the benefit of having retained these profits for the nearly 4 years in which this case was pending—which included a year of delay caused by Defendants' unsuccessful motion to dismiss for improper venue, in which they advanced the same frivolous arguments that the Court rejected for the second time in granting summary judgment for Plaintiffs. (*See* Opinion & Order, Dkt #28 p.15) ("I therefore decline to reach the novel conclusion that, as a matter of law, high-frequency trading positions by briefly-tenured shareholders such as Defendants, fall outside the ambit of §16(b))."

At Lopez Ex. 2 filed in support of this Motion, Plaintiff calculates the pre-judgment interest due to New Concept at **$1,077,315,** based on the IRS tax underpayment interest rate and compounded quarterly, in the manner applied by the court in *Roth v. Jennings*, 2009 WL 1440670, at *6.

## CONCLUSION

Judgment in the amount of $**6,102,002,** plus pre-judgment interest in the amount of **$1,077,315,** for a total award of **$7,179,317,** should be entered in favor of Plaintiff New Concept Energy, Inc., against Defendants Guy Gentile and Mintbroker International, Ltd. (jointly and severally).

Dated: New York NY
May 9, 2022

*s/ David Lopez*  
David Lopez (DL-6779)

*s/ Miriam Tauber*  
Miriam Tauber (MT-1979)

*Attorneys for Plaintiff New Concept Energy, Inc.*