UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
----------------------------------------- X
                                          :     18cv7291 (DLC)
AVALON HOLDINGS CORP.,                     :     18cv8896 (DLC)
                                          :
                      Plaintiff,           :
           -v-                             :     OPINION AND ORDER
                                          :
GUY GENTILE and MINTBROKER INTERNATIONAL, :
LTD.,                                      :
                                          :
                      Defendants.          :
                                          :
----------------------------------------- X
                                          :
NEW CONCEPT ENERGY, INC.,                  :
                                          :
                      Plaintiff,           :
           -v-                             :
                                          :
GUY GENTILE and MINTBROKER INTERNATIONAL, :
LTD.,                                      :
                                          :
                      Defendants.          :
----------------------------------------- X
```

APPEARANCES:

For the plaintiffs:
Law Office of David Lopez
David Lopez
171 Edge of Woods Road, PO Box 323
Southampton, NY 11968

Miriam Tauber Law
Miriam Deborah Tauber
885 Park Avenue 2A
New York, NY 10075

For the defendant Guy Gentile:
Ford O'Brien Landy LLP
Matthew Aaron Ford
Cara Filippelli
3700 Ranch Road 620 South, Suite B
Austin, TX 78738

DENISE COTE, District Judge:

Avalon Holdings Corporation ("Avalon") and New Concept Energy, Inc. ("New Concept"; together, "Plaintiffs") have sued Guy Gentile and Mintbroker International, Ltd. ("Mintbroker") in separate, related actions.  The Plaintiffs allege that the defendants violated § 16(b) of the Securities Exchange Act of 1934 by engaging in short-swing trading of their securities.

Relying on TransUnion LLC v. Ramirez, 141 S. Ct. 2190 (2021), Gentile moved on March 22, 2023 to dismiss both actions for lack of standing.  For the following reasons, Gentile's motion is denied.

## Background

The following facts are taken from the Avalon's first amended complaint and New Concept's complaint.  For the purposes of deciding this motion, the factual allegations in the Plaintiffs' pleadings are accepted as true, and all reasonable inferences are drawn in the Plaintiffs' favor.

Gentile is the director of Mintbroker, a Bahamian corporation, and has a "100% pecuniary interest in the proprietary trading activities" of Mintbroker.  In 2018, the defendants acquired enough stock to become a beneficial owner of more than 10% of Avalon and of New Concept.  The stock for Avalon, an Ohio corporation, and New Concept, a Nevada corporation, trade on the New York Stock Exchange.  Then, over a

2

period of days, the defendants engaged in short-swing trading of the Plaintiffs' securities, causing the price of the stock to rise and fall dramatically over a short period of time.  The defendants obtained profits of over $7 million from their trading of Avalon stock and over $6 million from their trading of New Concept stock.

Avalon filed its complaint on August 13, 2018, and amended the complaint on September 28.  New Concept filed its complaint on September 28, 2018.  Both actions allege that the defendants violated § 16(b) of the Securities Exchange Act of 1934 ("§ 16(b)"), 15 U.S.C. § 78p(b), and request disgorgement of the profits the defendants obtained from that trading.

An Opinion of September 24, 2019 denied the defendants' motions to dismiss these actions.  Avalon Holdings Corp. v. Gentile, Nos. 18cv7291 (VSB), 18cv8896 (VSB), 2019 WL 4640206 (S.D.N.Y. Sept. 24, 2019).  An Opinion of April 8, 2022 granted the Plaintiffs' motions for summary judgment on their § 16(b) claims, denied the defendants' motions for summary judgment, and referred the cases to Magistrate Judge Lehrburger for an inquest on damages.  Avalon Holdings Corp. v. Gentile, Nos. 18cv7291 (VSB), 18cv8896 (VSB), 2022 WL 1063004 (S.D.N.Y. Apr. 8, 2022). These actions were reassigned to this Court on August 17, 2022.

On September 20, 2022, Gentile moved to vacate the April 8, 2022 decision as to Mintbroker for lack of standing on the

3

ground that Mintbroker has been subject to liquidation
proceedings in the Bahamas during this litigation.  An Order of
September 27 denied Gentile's motion.  On November 29, after the
Plaintiffs suggested upon the record that Mintbroker had been
placed in involuntary liquidation proceedings in the Bahamas,
these actions were stayed as to Mintbroker.

An inquest on the claims against Gentile was held before
Magistrate Judge Lehrburger on February 1 and 2, 2023.  Post-
hearing briefing became fully submitted on May 19.  The report
and recommendation on the inquest is <u>sub judice</u>.

On March 22, Gentile moved to dismiss the claims against
him in these actions for lack of standing.[1]  The motion became
fully submitted on May 15.

### Discussion

When a Rule 12(b)(1) motion is made solely based on the
allegations in the pleading, the "task of the district court is
to determine whether the [p]leading alleges facts that
affirmatively and plausibly suggest that the plaintiff has
standing to sue."  <u>Carter v. HealthPort Tech., LLC</u>, 822 F.3d 47,
56 (2d Cir. 2016) (citation omitted).  The irreducible minimum
of Article III standing contains three elements.  <u>Dubuisson v.</u>

---

[1] On March 22, Gentile requested that Magistrate Judge Lehrburger
stay the inquest proceedings while this motion to dismiss was
pending.  Magistrate Judge Lehrburger denied the request on
March 28.

Stonebridge Life Ins. Co., 887 F.3d 567, 573 (2d Cir. 2018).
"[T]o plead Article III standing, a plaintiff must allege facts
plausibly demonstrating (1) an injury in fact, (2) a sufficient
causal connection between the injury and the conduct complained
of, and (3) a likelihood that the injury will be redressed by a
favorable decision." Brokamp v. James, 66 F.4th 374, 386 (2d
Cir. 2023) (citation omitted). As the party invoking federal
jurisdiction, the plaintiff bears the burden of establishing
these elements "for each claim he seeks to press and for each
form of relief that is sought." Keepers, Inc. v. City of
Milford, 807 F.3d 24, 42 (2d Cir. 2015) (citation omitted).

In Donoghue v. Bulldog Investors General Partnership, 696
F.3d 170 (2d Cir. 2012), the Second Circuit held that in a §
16(b) derivative action against a 10% beneficial owner of the
issuer's securities, an allegation of the defendant's violation
of § 16(b) established Article III standing. Id. at 177.
Gentile argues, however, that the Supreme Court's recent
decision in TransUnion LLC v. Ramirez overturned Bulldog, and
that under TransUnion, the Plaintiffs have failed to allege
facts sufficient to establish standing. In making this
argument, Gentile relies heavily on Packer ex rel. 1-800
Flowers.com, Inc. v. Raving Capital Management, LLC, No.
15cv5933 (JMW), 2023 WL 2484442 (E.D.N.Y. Mar. 13, 2023), appeal
filed, No. 23-367 (2d. Cir. Mar. 15 2023), in which the

Honorable James M. Wicks held that TransUnion could not be squared with Bulldog and that, consequently, the plaintiff had not alleged a concrete injury required to establish standing. Id. at *8.

This Court must follow Bulldog unless TransUnion is an intervening decision. "To qualify as an intervening decision, the Supreme Court's conclusion in a particular case must have broken the link on which [the Second Circuit] premised [its] prior decision, or undermined an assumption of that decision." SEC v. Rio Tinto plc, 41 F.4th 47, 53 (2d Cir. 2022) (citation omitted). "[T]he intervening decision need not address the precise issue already decided by [the Second Circuit], so long as there is a conflict, incompatibility, or inconsistency between this Circuit's precedent and the intervening Supreme Court decision." United States v. Hightower, 950 F.3d 33, 37 (2d Cir. 2020) (citation omitted).

The central question for this motion is whether TransUnion is an intervening decision that abrogates this Court's duty to follow Bulldog. The answer is no.

After a brief summary of § 16(b) and Bulldog, this Opinion will summarize TransUnion and recent Second Circuit decisions applying its holding. The Opinion will then turn to the question of whether TransUnion constitutes an intervening decision such that Bulldog is no longer binding on this Court.

6

I.   Section 16(b) and <u>Bulldog</u>

"Section 16(b) of the Exchange Act requires a beneficial owner of more than ten percent of a company's shares to disgorge profits obtained from a short-swing sale." <u>Packer ex rel. 1-800-Flowers.com v. Raging Cap. Mgmt., LLC</u>, 981 F.3d 148, 152 (2d Cir. 2020) (citing 15 U.S.C. § 78p(b)).  "The statute imposes strict liability on insiders likely to have access to insider information in order to take the profits out of a class of transactions in which the possibility of abuse was believed by the Congress that passed it to be intolerably great." <u>Klein ex rel. Qlik Techs., Inc. v. Qlik Techs., Inc.</u>, 906 F.3d 215, 219 (2d Cir. 2018) (citation omitted).  "Suits under [§ 16(b)] can be brought by the company that issues the relevant stock." <u>Id.</u>

In <u>Bulldog</u>, the Second Circuit held that a shareholder who brought a derivative action on behalf of the issuer had constitutional standing to enforce § 16(b).  696 F.3d at 172. In its discussion of the injury suffered by that § 16(b) plaintiff, the <u>Bulldog</u> court compared a § 16(b) violation to the injury arising from a breach of trust under the common law.  <u>See</u> <u>id.</u> at 177.  The court observed that § 16(b) "effectively makes 10% beneficial owners fiduciaries as directors and officers were . . . at least to the extent of making all short-swing transactions by such persons in the issuer's stock breaches of trust." <u>Id.</u> (citing <u>Gratz v. Claughton</u>, 187 F.2d 46, 49 (2d

7

Cir. 1951)).  The court reasoned: the "fiduciary duty was created by § 16(b), and it conferred upon [the issuer] an enforceable legal right to expect [the 10% beneficial owners of its stock] to refrain from engaging in any short-swing trading in its stock.  The deprivation of this right establishes Article III standing."  Id.  As a result, the issuer's right to the defendant's short-swing profits "derives from breach of a fiduciary duty created by the statute."  Id. at 178.

Rejecting the argument that a § 16(b) plaintiff is required to show that the defendant traded with the intention to profit from inside information, the Second Circuit further elaborated on its theory of the injury suffered by a § 16(b) plaintiff:

> [E]ven at common law, a fiduciary's duty to a beneficiary often required more than the avoidance of actual unfair dealing: "A trustee with power to sell trust property is under a duty not to sell to himself either at private sale or at auction, whether the property has a market price or not, and whether the trustee makes a profit thereby."  Drawing an analogy between trust law and the fiduciary duty created by § 16(b), Judge [Learned] Hand [in Gratz] observed that "[n]obody is obliged to become a director, an officer, or a beneficial owner; just as nobody is obliged to become the trustee of a private trust; but, as soon as he does so, he accepts whatever are the limitations, obligations and conditions attached to the position, and any default in fulfilling them is as much a violation of law as though it were attended by the sanction of imprisonment."

Id. at 177 (quoting Gratz, 187 F.3d at 49).

Bulldog also observed that "[w]hile this particular legal right might not have existed but for the enactment of § 16(b),

Congress's legislative authority to broaden the injuries that can support constitutional standing is beyond dispute." Id. at 179.  The court underscored, however, that the enactment of § 16(b) "did not eliminate the injury requirement of standing." Id. at 180.  Rather, § 16(b) "clarified the injury that would support standing, specifically, the breach by a statutory insider of a fiduciary duty owed to the issuer not to engage in and profit from any short-swing trading of its stock." Id. Therefore, the Second Circuit concluded, the plaintiff in Bulldog had adequately alleged facts to establish standing.

II.  TransUnion and its Progeny

Like Bulldog, TransUnion addressed a plaintiff's constitutional standing when Congress "elevate[s] to the status of legally cognizable injuries concrete, de facto injuries that were previously inadequate at law." TransUnion, 141 S. Ct. at 2205 (quoting Spokeo, Inc. v. Robbins, 578 U.S. 330, 341 (2016)).  There, the class action plaintiffs sued TransUnion LLC ("TransUnion") for violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681 et seq.  The FCRA claims arose from the plaintiffs' allegations that TransUnion had inaccurately identified the plaintiffs as a "'potential match' to a name on the" U.S. Treasury Department's Office of Foreign Assets Control's "list of specially designated nationals who threaten America's national security." Id. at 2201.  Specifically, the

plaintiffs alleged that TransUnion "failed to use reasonable procedures to ensure the accuracy of their credit files," that TransUnion "breached its obligation to provide [the plaintiffs] with complete credit files," and that TransUnion failed to include a required summary-of-rights with some of their mailings to the plaintiffs.  Id. at 2200, 2213.

In distinguishing between those plaintiffs that had standing and those that did not, the Supreme Court, in an opinion written by Justice Kavanaugh, emphasized that a "plaintiff's injury in fact [must] be concrete -- that is, real, and not abstract."  Id. at 2204 (citation omitted).  To determine whether an injury is concrete, "courts should assess whether the alleged injury to the plaintiff has a close relationship to a harm traditionally recognized as providing a basis for a lawsuit in American courts."  Id. (citation omitted).

The Supreme Court emphasized:

[F]or standing purposes, . . . an important difference
exists between (i) a plaintiff's statutory cause of
action to sue a defendant over the defendant's
violation of federal law, and (ii) a plaintiff's
suffering concrete harm because of the defendant's
violation of federal law.  Congress may enact legal
prohibitions and obligations.  And Congress may create
causes of action for plaintiffs to sue defendants who
violate those legal prohibitions or obligations.  But
under Article III, an injury in law is not an injury
in fact.  Only those plaintiffs who have been
concretely harmed by a defendant's statutory violation

10

> may sue that private defendant over that violation in
> federal court.

Id. at 2205 (emphasis in original).

The Supreme Court then assessed whether the class plaintiffs had standing.  Justice Kavanaugh first addressed the plaintiffs' standing as to their claim that TransUnion failed to follow reasonable procedures to ensure the accuracy of its credit reports, and separated the plaintiffs into two categories: those whose misleading credit reports were disseminated to third-parties, and those whose misleading credit reports were not disseminated to third-parties.  Id. at 2208-09. As to the former, the Court held that those plaintiffs had standing because the injury they suffered bore "a 'close relationship' to a harm traditionally recognized as providing a basis for a lawsuit in American courts -- namely, the reputational harm associated with the tort of defamation."  Id. at 2208 (citation omitted).  The plaintiffs whose credit reports were not disseminated, however, did not have standing because "[p]ublication is essential to liability in a suit for defamation," and "there is no historical or common-law analog to the mere existence of inaccurate information, absent dissemination."  Id. at 2209 (citation omitted).

The Court also held that the class plaintiffs did not have standing for their claims relating to TransUnion's incomplete

11

disclosures and failure to include a summary-of-rights with
certain mailings.  Id. at 1213.  Justice Kavanaugh found that
the class plaintiffs, except for the named plaintiff, had not
alleged that they had suffered any concrete harm from these
violations.  Id.

The Second Circuit has not yet addressed the impact of
TransUnion on its holding in Bulldog.  It has, however, applied
TransUnion to claims brought under two different statutes.  In
Maddox v. Bank of New York Mellon Trust Co., 19 F.4th 58 (2d
Cir. 2021), the Second Circuit held that the plaintiffs failed
to establish standing in a suit against a mortgage lender for
its violation of a New York statute that requires the lender to
record satisfaction of mortgages within thirty days of the
borrower's repayment.  Id. at 59-60.  Although the New York
statute imposed a penalty on the lender and granted the borrower
a right to sue to recover the penalty, the Second Circuit held
that the plaintiffs had not alleged a concrete harm under the
standard articulated in TransUnion, such as a cloud on title or
any reputational harm.  Id. at 64-65.[2]

In Harty v. West Point Realty, 28 F.4th 435 (2d Cir. 2022),
the Second Circuit addressed a plaintiff's standing under a

---

[2] The Court of Appeals observed that individual class members
retained the right to recover the penalty provided by the
statute in state court.  Maddox, 19 F.4th at 66.

provision of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 et seq.  The plaintiff alleged that a booking website violated the ADA by failing to include required information about its hotels' accessibility for people with disabilities.  Harty, 28 F.4th at 439.  The plaintiff viewed the website "as a 'tester' of ADA compliance, not as a prospective traveler seeking a wheelchair-accessible hotel."  Id. at 443. The Second Circuit held that the plaintiff did not suffer a concrete harm necessary to establish standing in an action for damages because the plaintiff had not alleged any intention to visit the hotels he viewed on the website.[3]  Id.

III. TransUnion's Impact on Bulldog

The Plaintiffs have adequately alleged standing, and Gentile's motion to dismiss is denied.  Just as the Supreme Court did in TransUnion, the Second Circuit in Bulldog analyzed the harm suffered by a § 16(b) plaintiff and reasoned that it was akin to the common law injury of breach of trust arising from the 10% beneficial owner's fiduciary duty to the issuer. Bulldog, therefore, is entirely compatible with TransUnion.

---

[3] Since TransUnion, the issue of "tester" standing under the ADA has divided the courts of appeal, and the Supreme Court has granted certiorari in a case raising this question.  See Laufer v. Acheson Hotels, LLC, 50 F.4th 259, 263 n.1 (1st Cir. 2022), cert. granted, 143 S. Ct. 1053 (2023).

Moreover, the Plaintiffs in these actions have not relied on barebones allegations of a statutory violation.  Their pleadings describe dramatic fluctuations in stock prices caused by the defendants' trading and illegally obtained profits accruing to the defendants in the millions of dollars.  By enacting § 16(b), Congress created "a flat rule taking the profits out of a class of transactions in which the possibility of abuse was believed to be intolerably great."  Reliance Elec. Co. v. Emerson Elec. Co., 404 U.S. 418, 422 (1972).  Here, the Plaintiffs alleged facts establishing the concrete harm that Congress elevated to a legally cognizable injury.

In his reply brief, Gentile puts forward two arguments against the Plaintiffs' position that the injury they have suffered bears a close relationship to common law breach of trust and therefore is sufficiently concrete to establish standing.  Neither are persuasive.

First, Gentile argues that Bulldog's fiduciary duty analysis "represented a break in Second Circuit precedent."  To support this contention, he cites Kendall v. Employees Retirement Plan of Avon Products, 561 F.3d 112 (2d Cir. 2009), which addressed a claim brought under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 et seq. 561 F.3d 112, 121 (2d Cir. 2009).  But, as Gentile acknowledges, the Bulldog court distinguished Kendall and found that the

14

general fiduciary duties imposed on an employer by ERISA were
different from the specific fiduciary duty imposed by § 16(b) on
10% beneficial owners of stock.  See Bulldog, 696 F.3d at 178.

Second, Gentile mischaracterizes Bulldog.  He points to the
observation in Bulldog that "Congress's legislative authority to
broaden the injuries that can support constitutional standing is
beyond dispute."  Id. at 179.  But, in the sentence that
directly follows, the Second Circuit expressly recognized:
"'Statutory broadening of the categories of injuries that may be
alleged in support of standing is a different matter from
abandoning the requirement that the party seeking review must
himself have suffered an injury.'"  Id. (quoting Lujan v.
Defenders of Wildlife, 504 U.S. 555, 578 (1992)).  The Bulldog
court stated that § 16(b) "did not eliminate the injury
requirement of standing."  Id. at 180.  This reasoning
anticipates the analysis in TransUnion.  Justice Kavanaugh
acknowledged that "Congress may elevate to the status of legally
cognizable injuries concrete, de facto injuries that were
previously inadequate in law."  TransUnion, 141 S. Ct. at 2204-
05 (citation omitted).  The Supreme Court added, however that
Congress cannot "enact an injury into existence," and stated
that "Article III standing requires a concrete injury even in
the context of a statutory violation."  Id. at 2205 (citation
omitted).

## Conclusion

Gentile's March 22, 2023 motion to dismiss these related actions is denied.

Dated:      New York, New York
            July 25, 2023


                              _____
                                    DENISE COTE
                              United States District Judge