UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------- X
                                        :    18cv7291 (DLC)
AVALON HOLDINGS CORP.,                   :    18cv8896 (DLC)
                                        :
                    Plaintiff,           :
           -v-                           :    OPINION AND ORDER
                                        :
GUY GENTILE and MINTBROKER INTERNATIONAL, :
LTD.,                                    :
                                        :
                    Defendants.          :
                                        :
---------------------------------------- X
                                        :
NEW CONCEPT ENERGY, INC.,                :
                                        :
                    Plaintiff,           :
           -v-                           :
                                        :
GUY GENTILE and MINTBROKER INTERNATIONAL, :
LTD.,                                    :
                                        :
                    Defendants.          :
---------------------------------------- X

APPEARANCES:

For the plaintiffs:
Law Office of David Lopez
David Lopez
171 Edge of Woods Road, PO Box 323
Southampton, NY 11968

Miriam Tauber Law
Miriam Deborah Tauber
885 Park Avenue 2A
New York, NY 10075

For the defendant Guy Gentile:
Olshan Frome Wolosky LLP
Thomas James Fleming
1325 Avenue of the Americas
New York, NY 10019

DENISE COTE, District Judge:

Plaintiffs Avalon Holdings Corp. ("Avalon") and New Concept Energy, Inc. ("New Concept") each brought an action against defendants Guy Gentile and Mintbroker International, Ltd. ("Mintbroker") for disgorgement of short-swing profits pursuant to § 16(b) of the Securities Exchange Act of 1934 (the "Act"). 15 U.S.C. § 78p(b). Section 16(b) requires a beneficial owner of more than ten percent of a company's shares to disgorge profits obtained from a short-swing sale. On April 8, 2022, the Honorable Vernon S. Broderick granted summary judgment for the plaintiffs, finding that the defendants had exceeded the 10% threshold and must disgorge short-swing profits to each plaintiff. Avalon Holdings Corp v. Guy Gentile and MintBroker International, Ltd., 597 F.Supp.3d 640 (S.D.N.Y. 2022) ("Gentile SJ").

Judge Broderick then referred the matter to Magistrate Judge Robert Lehrburger for determination of the amounts due to plaintiffs. This case was reassigned to this Court on August 17, 2022. On November 29, 2022, these actions were stayed as to Mintbroker due to liquidation proceedings in the Bahamas. After extensive briefing and a two-day evidentiary hearing, Judge Lehrburger issued the report and recommendation on October 6, 2023 ("Report") and recommended, as to Gentile, that Avalon be

awarded $6,235,908, New Concept be awarded $6,102,002, and prejudgment interest be awarded to each plaintiff.  Plaintiffs submitted objections to the Report on October 8, and Gentile submitted objections on November 3.  Plaintiffs submitted their response on November 21, and Gentile submitted a reply on December 6, 2023.

The crux of Gentile's objections to the Report is that some of the trades were made on behalf of clients; that for those trades, he cannot be considered a "beneficial owner" under § 16(b); and that the damages calculated in the Report should therefore be reduced.  The plaintiffs seek to correct one typographical error in the Report and an award of attorneys' fees.  For the following reasons, the Report's conclusions are adopted with the modifications described below.

## Background

This Opinion assumes familiarity with the Report and prior Opinions issued in this case and summarizes only the facts necessary to rule on Gentile's objections to the Report.  See Avalon Holdings Corporation v. Gentile, 2019 WL 4640206 (S.D.N.Y. Sept. 24, 2019) ("Gentile MTD I"); Gentile SJ; Avalon Holdings Corp. v. Gentile, 2023 WL 4744072 (S.D.N.Y. Jul. 25, 2023) ("Gentile MTD II").

3

Gentile was the director of Mintbroker, a day-trading broker-dealer firm that was registered under the securities laws of the Bahamas and has since been liquidated by Bahamian authorities.  In 2018, Mintbroker acquired enough stock to become a beneficial owner of more than 10% of Avalon and of New Concept, both of which trade on the New York Stock Exchange. Mintbroker acquired all the stock at issue through Interactive Brokers ("Interactive"), a clearing firm.  Mintbroker purchased 1,922,095 shares in Avalon on June 15, 2018, traded the stock thousands of times, and reduced its Avalon holdings to zero by August 21, 2018.  Mintbroker purchased 1,073,713 shares of New Concept stock on May 14, 2018, engaged in thousands of trades, and sold all of its shares by September 25, 2018.

Mintbroker filed Schedule 13D "Beneficial Owner Reports" in connection with its trading in both Avalon and New Concept stock.  Both Schedule 13D reports represented that the "source of funding for the purchase of the Shares was the general working capital of Mintbroker together with margin borrowing" and stated that the purpose of acquiring as much stock as it did was "an attempt to gain control over [Avalon/New Concept] and replace its board of directors with the near-term goal of selling the assets of [Avalon/New Concept]."  Gentile, by virtue of his relationship to Mintbroker, represented that he "may be

4

deemed to indirectly beneficially own (as that term is defined in Rule 13d-3 under the Exchange Act of 1934, as amended) those Shares which Mintbroker had owned" and that he "disclaim[ed] beneficial ownership of all such Shares for all other purposes."

Avalon filed its complaint on August 13, 2018, and amended the complaint on September 28.  New Concept filed its complaint on October 1, 2018.  Both actions allege that the defendants violated § 16(b) and request disgorgement of the profits defendants obtained from that trading.  Defendants filed motions to dismiss in both actions, which Judge Broderick denied on September 24, 2019.  <u>Gentile MTD I</u>.

Meanwhile, the Securities Commission of the Bahamas ("SCB") asked Gentile to appear for a meeting with regulators.  That meeting occurred on September 12, 2019.  On September 18, the SCB issued a letter to Gentile accusing Mintbroker of failing to trade any securities on behalf of clients and instead "recording" client orders internally in a manner akin to a Ponzi scheme with no transaction having been entered on the market. On September 23, Gentile left the Bahamas and gave directives to close down Mintbroker such that by the end of October or early November 2019, the office was closed and only a few employees remained.

Plaintiffs issued discovery requests to the defendants on October 16, 2019, including interrogatories asking about the extent to which, if at all, Mintbroker's trading of Avalon or New Concept shares was on behalf of clients.  Plaintiffs also subpoenaed records from a variety of entities, including Interactive, which produced its trading records.

On November 27, 2019, Mintbroker surrendered its license to operate in the Bahamas.  The plaintiffs, concerned with the lack of more detailed trading records and other supporting documentation produced by Gentile and Mintbroker, raised the issue with Judge Lehrburger, who held a discovery conference on January 22, 2020.  At that conference, defense counsel repeatedly assured Judge Lehrburger that Mintbroker had produced all relevant trading documents and that Gentile had done a diligent search and that there were no other records.  Counsel also stated that the Mintbroker account with Interactive "was a proprietary trading account" and that "Mr. Gentile was in charge of that account and placed the trades."  At no point did defense counsel suggest that any of the trading at issue was on behalf of Mintbroker customers or that customers would have relevant information.

Gentile was deposed on February 24, 2020.  He testified that he did not know for a fact that all trades reflected in the

produced records were Mintbroker's proprietary trades and that
it was possible that the records might have included client
trades.  Defense counsel suggested that client trades would be
reflected in a comparison of the Interactive records with
Mintbroker's 13D beneficial ownership filings.  Neither counsel
nor Gentile suggested that determining the extent of any trades
on behalf of clients would require review of other records not
yet produced.

In March 2020, the SCB placed Mintbroker in provisional
liquidation.  A discovery conference was held before Judge
Lehrburger on April 23, 2020 to discuss plaintiffs' request to
compel defendants to produce a copy of a thumb drive that,
according to Gentile, held all of Mintbroker's files.  To
resolve the issue of what data was reflected in the Interactive
records and obviate the need for production of the thumb drive,
defendants offered, and the parties ultimately agreed, to enter
into a stipulation on May 13, 2020, identifying the Interactive
trading account as Mintbroker's "proprietary" trading account
and confirming the accuracy of the Interactive records.  The
defendants agreed to the term "proprietary" to negate the need
for discussion of client accounts "which we know you want to be
clear about."

In June 2020, the defendants responded to requests for admission, admitting that "no trades reported in the Avalon Schedule 13D were executed in or on behalf of Managed Accounts held for the benefit of third-party customers or clients of Mintbroker."

In August 2020, both sets of parties filed for summary judgment, relying on the Interactive records. The defendants did not make any argument that the trading reflected in those records included trades for which they were not the beneficial owners because the trades had been executed for orders placed by customers. By December 2021, Mintbroker was placed into official liquidation.

On April 8, 2022, Judge Broderick granted plaintiffs' motions for summary judgment. Judge Broderick found that there was no genuine dispute of fact that 1) Mintbroker and Gentile were beneficial owners of the shares of Avalon and New Concept, as reflected in the Interactive records; 2) the defendants had investment power over the shares; and 3) the defendants had pecuniary interests in the shares because they had the opportunity to and did profit from them. Gentile SJ at 655-56. Judge Broderick referred the case to Judge Lehrburger to determine "the exact period of time that Defendants were more-

than-10% beneficial owners, as well as the calculation of damages." Id. at 656-657.

After the matter was referred to Judge Lehrburger, the plaintiffs filed motions for judgment seeking disgorgement of $6,235,098 to Avalon and $6,102,002 to New Concept, along with prejudgment interest.  The plaintiffs based their calculation on the Interactive records, using the standard lowest-in, highest-out method.  See, e.g., Analytical Surveys, Inc. v. Tonga Partners, L.P., 684 F.3d 36, 51 (2d Cir. 2012).

The defendants responded by seeking leave to introduce hundreds of pages of new records (the "Post-Discovery Records") purportedly establishing which trades were proprietary and which trades were actually client trades not reflecting beneficial ownership by Mintbroker.  This letter was filed on May 20, 2022 -- nearly four years after Avalon filed its complaint, two and a half years after the plaintiffs issued their discovery requests, and two years after the defendants stipulated that the accounts reflected in the Interactive data were proprietary accounts held by Mintbroker, of which Gentile was sole owner.

Gentile's excuse for the late production of these documents -- which purportedly came from the same thumb drive of which plaintiffs had sought production in April 2020, see 18cv7291 (ECF No. 55) -- was that during the provisional liquidation,

9

which began on March 5, 2020, he could not legally access
Mintbroker records.  Gentile claimed that after plaintiffs were
granted summary judgment, he reached out to Mintbroker's IT
manager, Stephen Darville, to ask whether he had access to
Mintbroker's trading records; Darville did, and provided them to
Gentile's experts.  Darville later stated at a deposition that
on December 27, 2019, Mintbroker's chief compliance officer
instructed Stephen Darville, Mintbroker's IT manager, to
maintain and make a copy of Mintbroker's records and deliver
them to Gentile's and Mintbroker's attorneys in the Bahamas.

The Report first addressed whether the Post-Discovery
Records, and testimony and opinions about them, should be
excluded.  Judge Lehrburger found that Gentile's assertion that
some of the Interactive trading was non-proprietary was barred
by the law of the case and that, in any event, the records and
expert testimony on which Gentile now sought to rely are
unreliable.  Thus, Judge Lehrburger calculated the damages
amount based on all trades reflected in the Interactive records,
and recommended that Avalon be awarded $6,235,908 in disgorged
profits, New Concept be awarded $6,102,002 in disgorged profits,
and prejudgment interest be awarded to each plaintiff.  These
recommendations are adopted with the modifications described
below.

## Discussion

When deciding whether to adopt a report, a court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1)(C).  A district court must "determine de novo any part of the magistrate judge's disposition that has been properly objected to."  Fed. R. Civ. P. 72(b); see Miller v. Brightstar Asia, Ltd., 43 F.4th 112, 120 (2d Cir. 2022).  To the extent, however, that the party "makes only conclusory or general objections, or simply reiterates the original arguments, the [district court] reviews the Report and Recommendation only for clear error."  Miller, 43 F.4th at 120.

Gentile has made five objections to the Report.  None have merit.

I.  Pecuniary Interest

Gentile's first objection is that the Report failed to consider his pecuniary interest in the subject transactions. This objection is without merit.  Judge Lehrburger expressly noted that the result of the calculation "would be no different under the 'pecuniary interest' standard."  Report at 5 n.2. And, as the Report also notes, Judge Broderick found that the defendants failed to create a genuine dispute that they had a

pecuniary interest in the trading as that term is defined in
Rule 16a-1(a)(2).  <u>Gentile SJ</u> at 655-56.

II.  Post-Discovery Records, Expert Witnesses

    Gentile's second objection is that the Report erred by
refusing to consider the Post-Discovery Records and related
testimony, and improperly excluded Gentile's expert witnesses.
That objection is overruled.  The Report correctly found that
Gentile's damages theory based on those records was
fundamentally incompatible with the summary judgment decision,
which held that "the trading records demonstrate that
[defendants] successfully sold thousands of shares that they
bought at a much lower price, and Defendants have failed to
create a genuine dispute that they have not reaped the profits
between the purchase price and the sale price."  <u>Id.</u> at 656.
The "trading records" referred to are the Interactive records;
further, Gentile's Rule 56.1 statements did not dispute that the
accounts in question were proprietary accounts.  Gentile's
calculations, based on the Post-Discovery Records, would result
in zero disgorgeable profits as to New Concept, a result that is
inconsistent with Judge Broderick's finding of liability as to
both companies.

    When a court "has ruled on an issue, that decision should
generally be adhered to by that court in subsequent stages on

the same case, absent cogent and compelling reasons to the contrary." JLM Couture, Inc. v. Gutman, --- F.4th ---, 2024 WL 172609, at *6 (2d Cir. Jan. 17, 2024) (citation omitted). Compelling reasons to revisit a decision include "an intervening change in law, availability of new evidence, or the need to correct a clear error or prevent manifest injustice." Doe v. East Lyme Board of Education, 962 F.3d 649, 662-63 (2d Cir. 2020) (citation omitted).

The Post-Discovery Records are not "new evidence." As is amply demonstrated by the record, Gentile could have obtained the records had he exercised a modicum of diligence. As Judge Lehrburger noted, Gentile voluntarily shut down Mintbroker after plaintiffs had served their discovery requests. It was not until March 5, 2020 -- when the BSC placed Mintbroker under provisional liquidation -- that Gentile lost direct control over Mintbroker's records. Further, Darville testified that he had provided a copy of the thumb drive to Gentile's own attorney in December 2019.

Nor would "manifest injustice" result from refusing to reopen the evidentiary record. Gentile repeatedly represented that all records had been produced and that other records did not exist or were merely duplicative of what had been produced. Gentile also stipulated that the accounts in the Interactive

records were proprietary to Mintbroker and did not represent any client trades.  The plaintiffs and the Court were entitled to rely on those representations.

The Report also correctly excluded the testimony of Gentile's experts.  One expert testified that he got "comfortable" that certain accounts in the Interactive records were in fact customer accounts "based on having looked at some unspecified number of unspecified account numbers in a 'master file' that Defendants did not produce and for which [the expert] did not make any record."  This does not reflect "reliable principles and methods" or "sufficient facts or data" as required by Fed. R. Civ. P. 702.  Nothing "in either Daubert or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the ipse dixit of the expert."  General Electric Company v. Joiner, 522 U.S. 136, 146 (1997).  The second expert "made no effort to verify or test the accuracy, completeness, [or] validity of" the Post-Discovery Records and thus his testimony is not based on sufficient facts or data.

III. Short-Swing Profits Calculation

As to the Report's calculation of short-swing profits, Gentile "makes only conclusory or general objections, or simply reiterates the original arguments" made before Judge Lehrburger.

14

Miller, 43 F.4th at 120.  Because no clear error exists in the
Report's calculation, that portion of the Report is adopted.
See id.

IV.  Pre-Judgment Interest

In awarding pre-judgment interest, the Report observed that
such an award is generally made but is discretionary.  The
report weighed the relevant factors and found it would be fair
and equitable to award interest here.

Gentile objects to the Report's recommended award of
prejudgment interest because it would be "unfair and inequitable
to award prejudgment interest for at least three reasons."  The
first of those reasons -- that "there is zero evidence that Mr.
Gentile himself had any pecuniary interest in many of the trades
at issue" -- is false, as explained above.  The second, that
Gentile had no role in reviewing or preparing the Schedule 13D
forms, is belied by the fact that his signature appears on the
Schedule 13D forms.  Finally, Gentile's argument that he did not
try to derail this litigation or act in bad faith can be swiftly
rejected.  As the Report confirms, the record reflects that
Gentile did not violate § 16(b) inadvertently and repeatedly
delayed this litigation through his machinations.  Gentile's
objection to the award of prejudgment interest is overruled.

V.    Standing

Gentile's objection that the plaintiffs lack standing is
overruled for the reasons set forth in this Court's Opinion of
July 25, 2023.  See Gentile MTD II.

The plaintiffs submitted two objections, the first of which
identifies a typo in line 3 of footnote 18, page 28.  That
objection is granted; the line should read "the Court finds that
Defendants have waived the exemption."  The second objection
requests permission to apply for an award of attorneys' fees due
to the dilatory tactics of the defense.  That objection is also
granted.

### Conclusion

The October 6, 2023 Report is adopted with the
modifications described above.  Avalon is awarded $6,235,908.
New Concept is awarded $6,102,002.  The plaintiffs shall submit
revised prejudgment interest calculations by February 16, 2024.

Dated:    New York, New York
          February 5, 2024

_____
DENISE COTE
United States District Judge