## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AVALON HOLDINGS CORP., | |
| Plaintiff, | No. 18-cv-7291 (DLC) (RJL) |
| v. | ECF Case |
| GUY GENTILE and<br>MINTBROKER INTERNATIONAL, LTD., | |
| Defendants. | |

Related to:

| | |
|---|---|
| NEW CONCEPT ENERGY, INC. | |
| Plaintiff, | No. 18-cv-8896 (DLC) (RJL) |
| v. | ECF Case |
| GUY GENTILE and<br>MINTBROKER INTERNATIONAL, LTD., | |
| Defendants. | |

### AFFIRMATION OF MIRIAM TAUBER IN
### OPPOSITION TO (Non-Party) JOSEPH ELY'S MOTION TO QUASH

**MIRIAM TAUBER** affirms the following upon her oath as an attorney and member of the bar of this Court, pursuant to 28 U.S.C. §1746:

1. I am a member of the bar of this Court and am one of the attorneys for the Plaintiffs (and now Judgment Creditors) of Defendant (and now Judgment Debtor) Guy Gentile. I submit this Affirmation in Opposition to Joseph Ely's Motion to Quash the Subpoenas issued to him individually, and as a principal officer of both Mint Global Markets (d/b/a SpeedTrader, etc.), and

1

its parent company, Mint Global Holdings, Inc., and the Declaration of Dana S. Gloor. (*Avalon* Dkt. 308; *New Concept* Dkt. 309.)

2. The subpoenas were issued in furtherance of Plaintiffs' efforts to identify assets that may be applied in satisfaction of the Judgments entered in their favor, which have not been paid or bonded. (*See* Dkt. 308-1, Plaintiffs' Subpoenas attached as Gloor Decl. Ex. A.)

3. Ms. Gloor informed me that she represented Joseph Ely and acknowledged receipt of the subpoenas on behalf of Mr. Ely in our conversation on June 14, 2024, referred to in her Declaration. (Dkt. 308-1 ¶7.)

4. Ms. Gloor told me that Mr. Ely has no responsive documents and no information regarding any assets or accounts held by either of the Defendants in our case; and repeats that statement in her Declaration as though it ends all discussion. It does not. As I told Ms. Gloor, Plaintiffs intend to question Mr. Ely on this response, which is incongruous with evidence and testimony elicited in these cases indicating that: (i) trades in the Plaintiffs' stocks were executed by Gentile through Mint Global Markets as "introducing broker;" (*see* Ex. 1—ETC Production Letter; Ex. 2—Gentile Dep. Tr. (excerpt); Ex. 3—Hearing Tr. (excerpt)); and (ii) funds were wired by Mint Global Markets to an Interactive Brokers account controlled by Gentile (*see* Ex. 4—Interactive Brokers or "IB" Correspondence.) Plaintiffs intend to inquire as to how it is that there are supposedly no documents reflecting this relationship and these wire transfers. We would invite Mr. Ely to take the opportunity to correct any misrepresentations made on his behalf to this Court by Ms. Gloor.

5. We respectfully remind the Court that incredible denials of the existence of documents have pervaded these cases. As reviewed in the Court's Opinion entering Judgments for the Plaintiffs, Gentile's attorneys affirmatively represented that customer records for Mintbroker

did not exist; after losing on summary judgment, Gentile attempted to base his damages defense on customer records that he then claimed to have located when convenient. *See Avalon Holdings Corp. v. Gentile*, 2024 WL 449278, at **4-5 (S.D.N.Y. Feb. 5, 2024) (Cote, J.)

6. Mr. Ely's denial through his attorney of the existence of responsive documents is familiar. It is also on-brand for the "Garnishee" entities i.e., Mint Global Markerts, Inc., and Mint Global Holdings, Inc., which Plaintiffs believe are controlled by Gentile, and for which Mr. Ely serves as a principal officer. (*See* Ex. 5—FINRA profile; Ex. 6—NYS records; Ex. 7—NV records; *see also* ¶8 below).

7. In our conversation, Ms. Gloor told me that Guy Gentile has no connection to SpeedTrader (i.e., Mint Global Markets) now, and had none for many years prior to the inception of these cases in 2018.

8. As I informed Ms. Gloor, that was also inconsistent with the evidence in our cases as described above (*see* ¶4 above & Exs. 1-4), and with publicly available information indicating that Mint Global Holdings, the parent of Mint Global Markets, is owned by the SUSA Trust, which is controlled by Nicholas Abadiotakis, an individual that Gentile has testified is "his Trustee." (*See* Exs. 5-7; *see also* Ex. 1—Gentile Dep. Tr. at p.16: "**Q: Mint Global Markets? … Do you own that company? A:** *Not directly*"; *see also* id. pp.26-27, re: Niocholas Abadiotakis)

9. Ms. Gloor suggested that Plaintiffs seek discovery from Nicholas Abadiotakis (i.e., "Gentile's trustee") before deposing Mr. Ely. As I informed Ms. Gloor, Plaintiffs intend to subpoena Mr. Abadiotakis *in addition to*, and not as a substitute for, the discovery and testimony sought from Mr. Ely. As Queen Elizabeth II said shortly before her passing, "Recollections may vary" among witnesses. Additionally, Ms. Gloor confirmed to me that Mr. Ely is the *only individual authorized to accept and respond to any subpoena addressed to Mint Global Markets*.

10. Ms. Gloor did not inform me of Mr. Ely's claimed affliction with Lyme Disease or state that there was any medical reason to excuse or defer his compliance with the subpoenas and appearance at the noticed deposition. Nonetheless, in an effort to accommodate Mr. Ely, I noted to M. Gloor that the subpoena provides for Mr. Ely's testimony to be taken remotely (i.e., via Zoom) at Mr. Ely's election, and I advised that Plaintiffs were willing to work with Mr. Ely to schedule a convenient date and time for his deposition. I confirmed that Plaintiffs would arrange to pay any *per diem* fees and expenses required by applicable rules. I also inquired whether Mint Global Markets i.e., SpeedTrader could designate another individual to testify as a F.R.C.P. 30(b)(6) representative. Ms. Gloor informed me that *there was no one other than Mr. Ely who could testify in that capacity.*

11. Ms. Gloor asserts that Plaintiffs are placing an undue burden on Mr. Ely sanctionable under F.R.C.P. 45(d)(1) because Plaintiffs' counsel refuse to believe what Ms. Gloor says Mr. Ely says, and instead demand to hear directly from and cross-examine Mr. Ely himself. We respectfully demur. We have offered reasonable accommodations to obtain Mr. Ely's testimony at a time and in a manner convenient for him. Our refusal to accept hearsay statements in lieu of admissible testimony is not sanctionable under any Rule. (Ms. Gloor's baseless accusation of sanctionable conduct, on the other hand, may itself be sanctionable).

12. On June 20, 2024, I spoke with David Richan, an attorney with Baritz & Colman LLP, who told me that he also represented Mr. Ely in connection with the pending Motion to Quash. I told Mr. Richan that Plaintiffs intended to oppose the Motion for the reasons explained to Ms. Gloor and summarized in this Affirmation. On June 21, 2024, following my call with Mr. Richan and at his request, I sent copies of the discovery documents supporting Plaintiffs' subpoenas (i.e.,

Exs. 1 and 4) to both Mr. Richan and Ms. Gloor. (*See* <u>Ex 8</u>—Motion Correspondence.) Mr. Ely has not withdrawn his Motion.

13. For the reasons described above and in the accompanying Brief in Opposition to the Motion to Quash, I urge the Court to deny Mr. Ely's Motion and to direct the production of documents and deposition sought by Plaintiffs' outstanding Subpoenas.

I have read the foregoing and affirm the truth of all factual matters upon my oath as an attorney, intending the penalties of perjury to apply, this <u>25th</u> day of <u>June 2024</u>.

_____
 Miriam Tauber
 *Attorney for Plaintiffs/Judgment Creditors*
 *Avalon Holdings Corp.; New Concept Energy, Inc.*

5