UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------X
                                                    :
AVALON HOLDINGS CORPORATION,  :
                                                    :
                    Plaintiff,                      :
                                                    :          18-CV-7291 (DLC) (RWL)
             - against -                            :
                                                    :          18-CV-8896 (DLC) (RWL)
GUY GENTILE and MINTBROKER             :
INTERNATIONAL, LTD.,                        :
                                                    :
                    Defendants.                     :
----------------------------------------------------:          **ORDER**
                                                    :
NEW CONCEPT ENERGY, INC.,              :
                                                    :
                    Plaintiff,                      :
                                                    :
             - against -                            :
                                                    :
GUY GENTILE and MINTBROKER             :
INTERNATIONAL, LTD.,                        :
                                                    :
                    Defendants.                     :
----------------------------------------------------X

**ROBERT W. LEHRBURGER, United States Magistrate Judge.**

        This order resolves the parties' dispute about whether the former lawyers of

Defendant and judgment-debtor Guy Gentile should be required to disclose information

about Gentile's payment of attorney's fees, including the means and sources of payment,

in aid of Plaintiffs' efforts to enforce money judgments against Gentile.  For the reasons

that follow, the information sought shall be produced.

                                  **Background**

        Plaintiffs Avalon Holdings Corporation ("Avalon") and New Concept Energy, Inc.

("New Concept") separately sued Guy Gentile ("Gentile") and his offshore brokerage

company for disgorgement of short-swing profits under § 16(b) of the Securities Exchange Act of 1934.  For most of the proceedings, from October 2018 to October 2023, Defendants were represented by Adam C. Ford and other attorneys from Ford O'Brien Landy LLP ("Ford" or the "Ford Firm").

Following discovery, summary judgment finding Gentile liable on the merits, additional discovery, a hearing on damages, and post-hearing briefing, the undersigned issued a Report and Recommendation on October 6, 2023 (the "R&R") addressing the damages to be awarded to Plaintiffs.  (Dkt. 240.[1])  Three weeks later, on October 27, 2023, the Ford Firm attorneys moved to withdraw as counsel.  (Dkts. 248-253.)  The Court granted the motions on November 29, 2023.  (Dkt. 266-71.)  Meanwhile, the firm Olshan Frome Wolosky LLP (the "Olshan Firm") appeared on behalf of Gentile and asserted objections to the R&R.  (Dkt. 255.)  Although the Ford Firm is no longer counsel to Gentile in the instant cases, it continues to represent Gentile in a matter before the SEC.  (Dkt. 375 at 3.)

On March 20, 2024, District Judge Denise L. Cote entered final judgment for Plaintiffs Avalon and New Concept, awarding each more than $8 million (inclusive of pre-judgment interest) against Defendants.  (Dkt. 281.)  Since then, employing New York procedures for enforcement of judgments pursuant to Federal Rule of Civil Procedure 69, Plaintiffs have been engaged in efforts to enforce the judgments and locate assets to satisfy them.

On May 29, 2024, the Olshan Firm reported that it had lost communication with Gentile (Dkt. 303), and sought to withdraw as counsel.  On June 12, 2024, Judge Cote

---

[1] All citations to the docket refer to filings in Case No. 18-CV-7291.

2

ordered that the Olshan Firm would be relieved as counsel "once Gentile has agreed to accept service at a designated address." (Dkt. 307.) Gentile has not so agreed, or even appeared, and Plaintiffs apparently do not know where he can be found. On September 20, 2024, Judge Cote found Gentile in civil contempt for failing to respond to post-judgment subpoenas. (Dkt. 314.) She issued a bench warrant for Gentile's arrest anywhere in the United States and ordered that Gentile be incarcerated until he responds to the judgment-creditor subpoenas. (*Id.* at 4-5.)

Unable to obtain responses to the subpoenas directed to Gentile, Plaintiffs have pursued other sources of information, including the Ford Firm, Gentile's former attorneys. Plaintiffs served information subpoenas on the Ford Firm and seek a 30(b)(6) deposition from the Ford Firm. The Ford Firm has responded to 26 of 27 of the information requests. (*See* Dkts. 359-1; 359-2; Dkt. 366 at 3.) The one unanswered request, No. 21, asks whether the Ford Firm or any of its partners have been paid for representing Gentile in either the Avalon or New Concept cases since before March 20, 2024,[2] and specifically: (a) "By whom, on what date[s], and using what payment medium?"; (b) "If by check or wire transfer, on or through what bank[s] were payments drawn or transmitted?"; and (c) "Do you have copies or originals of the checks or any receipts of confirmations of any payments? If so, provide copies." (Dkt. 359-2 at 5 no. 21 ("Request No. 21").)

## Discussion

The Ford Firm has declined to answer Request No. 21 on grounds of relevance and attorney-client privilege. As to the latter, Ford argues that disclosure of the requested

---

[2] Request No. 21 as written does not include the March 20, 2024 delimiter, but that is what remains of the request given that the Ford Firm has answered Request No. 22 by stating that it has not been paid for any matter in which it represents Gentile since March 2024. (*See* Dkt. 366 at 3.)

payment information could lead to the discovery of Gentile's whereabouts, which is information subject to attorney-client privilege and remains so now that Ford no longer represents Gentile. That argument dispenses with the relevance argument; Gentile's whereabouts is plainly relevant to Plaintiff's ability to locate Gentile and enforce the judgment against him.

Ford's assertion of privilege also misses the mark.    Depending on the circumstances, communication of a client's address to their attorney may be deemed subject to attorney-client privilege. *Compare Elliott Associates, L.P. v. Republic of Peru*, 176 F.R.D. 93, 99 (S.D.N.Y. 1997) (address and telephone number of two clients were privileged and not subject to disclosure where the attorney's clients were not parties to the litigation) *with Matter of Grand Jury Subpoenas Served Upon Field*, 408 F. Supp. 1169, 1173 (S.D.N.Y. 1976) ("Certainly the information will not be considered privileged simply because the client communicated his address to his attorney to enable him to receive advice about matters having nothing to do with that information").

In *Field*, the court found that a client's address was privileged because it was "communicated for the specific purpose of receiving legal advice and the address itself [wa]s at the heart of the advice sought." *Id*.  Where the client's address has not been the subject of the legal advice sought, federal courts have required disclosure from the attorney. *See, e.g.*, *In re Celsius Network LLC*, No. 22-BR-10964, 2025 WL 1356378, at *4-5 (S.D.N.Y. Br. May 9, 2005) (requiring attorneys to produce client address and contact information that was not itself subject of legal advice); *Litton Industries, Inc. v. Lehman Brothers Kuhn Loeb Inc.*, 130 F.R.D. 25, 25 (S.D.N.Y. 1990) (compelling attorney to be deposed for purpose of disclosing client's whereabouts, discussing *Field* and other cases,

4

and stating that "[t]he common theme of cases such as these is that the client is not entitled to shield information which the client has provided to the attorney not in confidence, as the factual basis for the request for legal advice, but only as incidental to the establishment of the relationship").  Ford has not suggested (let alone provided any factual support) that Gentile's address was the subject of legal advice provided by Ford.  Accordingly, any information that Ford has about Gentile's address or whereabouts is not privileged.

Moreover, the information sought by Request No. 21 is fee and payment information, not Gentile's address.  And, Ford concedes that fee-related information, "however it may be defined in each particular case, is often treated as non-privileged and therefore discoverable."  (Dkt. 375 at 2-3.)  *See Lefcourt v. U.S.*, 125 F.3d 79, 86 (2d Cir. 1997) ("[a]s a general rule, a client's identity and fee information are not privileged"); *S.E.C. v. Sassano*, 274 F.R.D. 495, 497 (S.D.N.Y. 2011) ("it is well settled that information regarding payment of attorneys' fees by a client is not covered by the attorney-client privilege absent special circumstances").  Indeed, "absent special circumstances not present here, disclosure of fee information and client identity is not privileged even though it might incriminate the client."  *In re Grand Jury Subpoena Served Upon Doe*, 781 F.2d 238, 248 (2d Cir. 1986) (en banc) (citing *In Re Shargel*, 742 F.2d 61, 63 (2d Cir. 1984).  "This result follows from defining the privilege to encompass only those confidential communications necessary to obtain informed legal advice" rather than "focus[ing] upon whether the materials sought may be used as evidence against the client."  *In re Shargel*, 742 F.2d at 62.

As with Gentile's address, Ford has not suggested (or provided any factual evidence) that Gentile's payment of fees, including the source and methods of payment, was the subject of any attorney-client advice, a necessary element for the attorney-client privilege to apply.  The information therefore is not protected by the privilege.  *See In re Subpoena Duces Tecum served on Clarick Gueron Reisbaum, LLP*, No. M8-85, 2010 WL 4967441, at *2 (S.D.N.Y. Nov. 30, 2010) (compelling law firm, in response to judgment enforcement subpoena, to produce client payment information where client had not sought advice about payment information).

Ford contends, however, that "when disclosure of such information – here, principally, the source and methods of payment – would tend to reveal confidential information about a former client's whereabouts, which is otherwise protected from disclosure, it must remain protected."  (Dkt. 375 at 3.)  He quotes the Second Circuit as recognizing the "confidential communication exception," whereby access to information is barred where "disclosure would in substance be a disclosure of the confidential information."  (*Id.* (quoting *Vingellis v. U.S. D.E.A.*, 992 F.2d 449, 452-53 (2d Cir. 1993).)  The premise to that proposition, however, does not apply here:  the address information that may be derived from whatever payment information the Ford Firm provides is not privileged as it was collateral to and not the subject of attorney-client advice.

Ford thus relies principally on New York state law to avert disclosure.[3]  In *Matter*

---

[3]  The parties disagree whether federal or state law governs the assertion of attorney-client privilege in the instant proceeding.  Plaintiffs assert that federal common law governs inasmuch as the court's subject matter jurisdiction is grounded in federal law, not diversity jurisdiction.  (Dkt. 371 at 2.)  *See* Fed. R. Ev. 501 ("in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision").  Ford concedes that, because the case proceeded based on federal question jurisdiction, federal common law of privilege applied "during the course of litigation."  (Dkt. 375 at 2 n.1.)  Ford nonetheless contends that New York state law now governs the privilege issue because Plaintiffs are seeking to enforce the judgment pursuant

*of Jacqueline F.*, relied on by Ford, the New York Court of Appeals addressed "the circumstances under which an attorney may be compelled on pain of contempt to disclose the address of his client notwithstanding a claim that such information was the subject of a privileged communication."  47 N.Y.2d 215, 217, 391 N.E.2d 967 (1979).  There, custody of a child had been awarded to the child's natural parents, and the Surrogate Court ordered the child's aunt to cede custody.  Rather than complying, and while the order was on appeal, the aunt absconded with the child.  After the appellate court affirmed the Surrogate Court's determination, the parents moved to compel the aunt's attorney to disclose the whereabouts of his client.  The appellate court granted the motion to compel and the attorney appealed.

The Court of Appeals affirmed, holding that the attorney was required to provide his client's address.  Three separate opinions were issued.  The majority opinion ruled that the information sought would not be afforded attorney-client privilege protection because public policy concerns overcame any assertion of the privilege.  The majority recognized that, during litigation, New York rules require an attorney to disclose their client's address.  *See* N.Y. C.P.L.R. 3118 (requiring a party to honor another party's demand for the party's address).  But once litigation or the attorney-client relationship ended,  those rules did not apply and "the attorney cannot then be compelled to disclose

---

to New York state rules.  The Court is skeptical of that argument.  *See Copalcor Manufacturing (PTY) Ltd. v. Meteor Industries, Inc.*, No. 87-CV-1612, 1988 WL 52194, at *2 n.2 (E.D.N.Y. May 16, 1988) (finding that federal law of privilege governed discovery for enforcement of judgment). Even though the parties disagree on the applicable law, Plaintiff asserts, and the Ford Firm appears to accept, that "there is no conflict with New York law on issues relevant to [the instant motion]."  (Dkt. 371 at 2; *see* Dkt. 375 at 2 n.1.)  Without embracing that statement in full, the Court addresses both federal and state cases.  *See Copalcor*, 1988 WL 52194, at *2 (stating that although "federal privilege law governs in this case[,] New York cases, of course, remain helpful to the extent that they address pertinent issues, since New York law on the attorney-client privilege is virtually the same as the federal law on the subject").

his client's address, even it be to enable the defendant to pursue aggressively by new proceedings founded on the judgment." *Jacqueline F*., 47 N.Y.2d at 220-21 (internal quotation marks and citations omitted). The majority found that "the underlying proceeding" during which the attorney represented the aunt had ended with the Surrogate's revocation of the aunt's letters of guardianship and that the matter before it was a "collateral proceeding." *Id.* at 221. The majority thus considered the attorney's knowledge of his client's address to be protected. *Id.* The majority required disclosure, however, because the best interests of the child was a "vital" public interest sufficient to outstrip the protection afforded by attorney-client privilege. *Id.* at 222.

The concurring opinion of Judge Jones took the view that the case did not turn on either attorney-client privilege or the public interest. Rather, the concurrence explained, disclosure was required pursuant to state law and "[a] uniform line of cases [recognizing] the right of the courts in pending litigation to direct an attorney representing one of the parties to that litigation to reveal his client's address." *Id.* at 223. Unlike the majority, the concurrence considered the posture of the case to be part of, not collateral to, the underlying litigation. Judge Jones reasoned: "Until enforcement has been effected the litigation has not concluded." (*Id.* at 225; *see also id.* at 224 ("As a matter of evident practicality, if the objective of the litigation is to be achieved, the dispute between the parties resolved, and the adjudication of the court enforced, it is necessary to know how the parties may be located").

In dissent, Judge Fuchsberg opined that the address was protected by attorney-client privilege because the client provided it to the lawyer to keep him "posted" as to where he could reach his client. *Id.* at 227. As such, the privilege was "not subject to

invasion merely because that might ... make easier the execution of a judgment of a court, or, by way of further example, even the apprehension of a fugitive from justice." *Id.* at 228.

The instant case is distinguishable from *Jacqueline F.* in significant respects, but in ways that underscore why the information sought is not protected as Ford would have it. First, the information sought here is for payment information, which was not the subject of a privileged attorney-client communication. Second, the argument that disclosure of the payment information is tantamount to disclosing Gentile's whereabouts is unduly speculative. The fact that Ford does not know where Gentile may be found demonstrates as much. (*See* Dkt. 359-2 at No. 13 ("Do you know where Guy Gentile now resides or may be found? A: No").)

By Ford's logic, virtually no information could be disclosed by counsel because it theoretically could help locate their former client, no matter the number of steps or inferences it may take to make that discovery. Of course, if Gentile paid by check, it is quite possible the check would have address information on it. But any such information would be more than a year old, and, given Gentile's disappearance soon before or after entry of judgment, would be unlikely to reflect Gentile's current whereabouts. And while the information likely would disclose the bank and account from which funds were drawn, Plaintiffs would still need to pursue discovery (such as an information subpoena served on the bank) to obtain Gentile's address (which again may well be stale).

Ford has cited a New York lower court case where the court, on the basis of attorney-client privilege, denied a judgment creditor's request to compel the judgment debtor's attorney to provide cancelled checks by which the judgment debtor paid his

attorney's fees, as well as the name of the bank or the client's account number.  *Boller v. Barulich*, 147 Misc.2d 502, 506, 557 N.Y.S.2d 833 (Civ. Ct. N.Y. Cty. 1990).  In *Boller*, the attorney from whom the information was sought did not represent the defendant in the proceeding leading to the judgment against him.  Rather, the attorney represented the defendant only in connection with a motion to vacate the judgment, which was denied. 147 Misc.2d at 503.  The court relied on another lower court decision, *Potamkin Cadillac Corp. v. Kargard*, 100 Misc.2d 627, 420 N.Y.S.2d 104 (Civ. Ct. N.Y. Cty. 1979), noting that in that case the law firm from whom disclosure was sought did not appear or participate in the underlying action.  *Id*. at 505.  Here, unlike the attorneys in *Potamkin*, and *Boller*, the Ford Firm represented Gentile for most of the underlying proceedings that culminated in the judgment.  Regardless, the Court finds more persuasive the federal law that countenances disclosure of the information sought here.

In addition to answering Request No. 21, Plaintiffs ask the Court to require the Ford Firm to be deposed and that Matthew Ford in particular be its Rule 30(b)(6) representative.  (Dkt. 371 at 1; Dkt. 372.)  The Ford Firm objects to being deposed at all and to Plaintiffs' designating specifically who will be the firm's representative.  (Dkt. 366 at 5; 375 at 5 n.3.)  As the Ford Firm has yet to answer Request No. 21 consistent with this order, it is premature for the Court to determine whether the Ford Firm should be deposed at all.  If, after receiving the Ford Firm's answer to Request No. 21, Plaintiffs believe they require a deposition, they shall meet and confer with Ford, and, if a dispute remains, shall renew its request for a deposition explaining in detail what information they need to obtain by deposition that they have not already received by answers to the information requests.

## Conclusion

For the forgoing reasons, the Ford Firm's motion for a protective order is denied. The Ford firm shall provide the information requested by Request No. 21 within **7 days** of this Order. The Ford Firm shall serve its privilege log within **14 days** of the date of this order. To the extent not discussed above, the Court has considered the parties' arguments and finds them to be either moot or without merit.[4]

The Clerk of Court is respectfully directed to terminate the letter motions at **Dkt. 366 in Case No. 18-CV-7291** and **Dkt. 336 in Case No. 18-CV-8896**.

SO ORDERED,

_____
ROBERT W. LEHRBURGER
UNITED STATES MAGISTRATE JUDGE

---

[4] Plaintiffs invoke the crime-fraud exception to protection of attorney-client privilege as an additional basis for requiring disclosure. (Dkt. 371 at 4.) As Ford notes, however, that exception requires showing both that there is a factual basis to show probable cause suggesting that a fraud or crime has been committed and that the communications in question were in furtherance of the crime. A party seeking "to invoke the crime-fraud exception must demonstrate that there is a factual basis for a showing of probable cause to believe that a fraud or crime has been committed and that the communications in question were in furtherance of the fraud or crime." *United States v. Jacobs*, 117 F.3d 82, 87 (2d Cir. 1997); *see also In re Richard Roe, Inc.*, 68 F.3d 38, 40 (2d Cir. 1995) ("the crime-fraud exception does not apply simply because privileged communications would provide an adversary with evidence of a crime or fraud.... Instead, ... the client communication or attorney work product in question [must] *itself* [be] in furtherance of the crime or fraud") (emphasis in original). Plaintiffs have not suggested that Gentile's payments to the Ford Firm before entry of judgment were in furtherance of a crime or fraud. Rather, Plaintiffs assert that Ford's assertion of attorney-client privilege to prevent disclosure of year-old information about Gentile is in aid of Gentile's evasion of the bench warrant issued for his arrest. Granted, that is of serious concern; the administration of justice is undermined if "a fugitive can effectively use the attorney-client privilege to defy a lawful court order." *Commonwealth v. Maguigan*, 511 Pa. 112, 130, 511 A.2d 1327 (Pa. 1986); *see also Fellerman v. Bradley*, 99 N.J. 493, 507, 493 A.2d 1239 (N.J. 1985) ("the enforcement of the privilege" to prevent the court from enforcing a final judgment requiring payment of fees "would result in a clear impairment of the administration of justice. The nondisclosure of the client's address would totally frustrate the orderly process of the judicial system."). But, given the requirements for the crime-fraud exception to apply, the Court is not convinced that the record before it supports application of the exception to the disclosure sought here (i.e., response to Request No. 21).

Dated:   May 22, 2025
         New York, New York

Copies transmitted to all counsel of record.